GRANT (HARTFORD & N. H. R. CO. v.). See Case No. 6,159.

## Case No. 5,696.

### GRANT et al. v. HEALEY.

[3 Sumn. 523; [1] 2 Law Rep. 113.]

Circuit Court, D. Massachusetts. May Term, 1839.

RATE OF EXCHANGE—BALANCE OF ACCOUNT—REIMBURSEMENT.

1. Where a suit was brought, for a balance of account, for advances made at Boston, upon goods consigned to the plaintiffs at Trieste, and sold by them at a great loss, it was *held,* that the balance was not payable at Trieste, but at Boston, and, therefore, the balance was to be estimated in damages at the par, and not at the rate of exchange.

2. Where a balance is due on account, payable in a foreign country, the creditor, if he sues for the same in another country is entitled to be paid at the rate of exchange. In other words, he is entitled to have the money replaced, where it was agreed to be paid.

[Cited in Mygatt v. Green Bay, Case No. 9,-998; Reiser v. Parker, Id. 11,685; Hargrave v. Creighton, Id. 6,064.]

[Cited in Marburg v. Marburg. 26 Md. 16;

[1] [Reported by Charles Sumner, Esq.]

Pfeil v. Higby, 21 Wis. 250; Lodge v. Spooner, 8 Gray, 169; First Nat. Bank of Toledo v. Shaw, 61 N. Y. 293.]

3. Semble.—That there is no difference between bills of exchange and other contracts for payment of money in a foreign country, as to the right to damages to replace the money, where it was payable, except that the usage of trade has fixed the rate of damages.

4. Semble, that advances ought to be deemed reimbursable at the place where they are made, and sales of goods accounted for at that place, where they are made, or authorized to be made.

Indebitatus assumpsit for a balance of accounts. The declaration also contained the money counts. Plea—general issue. At the trial it appeared, that the plaintiffs were merchants at Trieste, in Austria, and the defendant a merchant in Boston. In December, 1836, the plaintiffs, by their agent, Mr. Trueman, a resident at Boston, advanced to the defendant the sum of £4565 sterling, by a bill drawn on Messrs. Baring, Brothers & Co., London, reimbursable to that house by a bill to be drawn upon the plaintiffs by that house, payable at Trieste. In consideration of the advance, the defendant agreed to ship, and did ship on board the bark Talent, a cargo, principally of sugars, consigned to the plaintiffs at Trieste for sale. The bark sailed on the voyage, and at the time of her arrival at Trieste in March, 1837, the market for this kind of sugars (Manilla sugars) was exceedingly depressed, in consequence of some changes in the Austrian tariff of duties, and the uncommon embarrassment of the money market on the continent of Europe. The market for sugar continued to fall until the month of August, 1837; the bills drawn by Messrs. Baring & Co., for their reimbursement, became due in June, 1837; and the sugars were sold in the month of April, 1837, at a price less than half of their invoice value. The defence at the trial was, that the sale was improperly made by the plaintiffs, and the sugars were sacrificed in violation of their duty, if not in breach of their orders. In consequence of these disastrous sales, unexpected by the parties, the net proceeds fell far short of the advance money. This suit was brought for the balance; and it was agreed between the parties, that if the verdict was found for the plaintiffs, the money due should be fixed by the parties, or by an assessor appointed by the court. The jury found a verdict for the plaintiffs. The parties afterwards agreed as to the amount due, except as to a single item; and that was, whether the defendant should be charged for the balance, according to the par of exchange, or the actual rate of exchange, between Boston and Trieste, at the time of the verdict.

C. G. Loring and Mr. Sprague, for defendant.

S. D. Parker and Mr. Choate, for plaintiff.

The cases of Smith v. Shaw [Case No. 13,-107]; Adams v. Cordis, 8 Pick. 260; and Lanusse v. Barker, 3 Wheat. [16 U. S.] 101, were cited.

STORY, Circuit Justice. Upon this point I have wished for a little time for reflection, although at the argument I ventured to express what was the inclination of my opinion. In all cases which respect the daily transactions of commercial men, I feel a great desire not to interfere with the known and settled habits of business; and should rather incline to follow the usage, if any, than to form a new rule of my own. No settled usage has been shown; and, therefore, the rule must be settled upon principle. I take the general doctrine to be clear, that whenever a debt is made payable in one country, and it is afterwards sued for in another country, the creditor is entitled to receive the full sum necessary to replace the money in the country, where it ought to have been paid, with interest for the delay; for then, and then only, is he fully indemnified for the violation of the contract. In every such case, the plaintiff is, therefore, entitled to have the debt due to him first ascertained at the par of exchange between the two countries, and then to have the rate of exchange between those countries added to, or subtracted from, the amount, as the case may require, in order to replace the money in the country, where it ought to be paid. It seems to me, that this doctrine is founded on the true principles of reciprocal justice.

The question, therefore, in all cases of this sort, where there is not a known and settled commercial usage to govern them, seems to me to be rather a question of fact, than of law. In cases of accounts and advances, the object is to ascertain, where, according to the intention of the parties, the balance is to be repaid, whether in the country of the creditor, or that of the debtor. In Lanusse v. Barker, 3 Wheat. [16 U. S.] 101, 147, the supreme court of the United States seem to have thought, that where money is advanced for a person in another state, the implied understanding is to replace it in the country, where it is advanced, unless that conclusion is repelled by the agreement of the parties, or by other controlling circumstances.[2] Governed by this rule, the money being advanced in Boston, so far as it was not reimbursed out of the proceeds of the sales in Trieste, would seem to be proper to be repaid in Boston. In relation to mere balances of account between a foreign factor and a home merchant, there may be more difficulty in ascertaining, where the balance is reimbursable, whether it is where the creditor resides, or where the debtor resides. Perhaps it will be found, in the absence of all controlling circumstances, the truest rule and the easiest in its application, that ad-

---

[2] Mr. Justice Baldwin decided the same point in Woodhull v. Wagner [Case No. 17,975].

vances ought to be deemed reimbursable at the place where they are made, and sales of goods to be accounted for at the place where they are made or they are authorized to be made. See Story, Confl. Laws, §§ 283–285; Bainbridge v. Wilcocks [Case No. 755]. Thus, if a consignment is made in one country for sales in another country, where the consignee resides, the true rule would seem to be to hold the consignee bound to pay the balance there, if due from him, and if due to him on advances there made, to receive the balance from the consignor there. The case of Consequa v. Fanning, 3 Johns. Ch. 587, 610, which was reversed in 17 Johns. 511, proceeded upon this intelligible ground, both in the court of chancery and in the court of errors and appeals, the difference between these learned tribunals not being so much in the rule, as in its application to the circumstances of that particular case. I am aware that a different rule in respect to balances of account and debts due and payable in a foreign country, was laid down in Martin v. Franklin, 4 Johns. 125, and Scofield v. Day, 20 Johns. 102, and that it has been followed by the supreme court of Massachusetts, in Adams v. Cordis, 8 Pick. 260. It is with unaffected diffidence, that I venture to express a doubt as to the correctness of the decisions of these learned courts upon this point. It appears to me that the reasoning in 4 Johns. 125, which constitutes the basis of the other decisions, is far from being satisfactory. It states very properly that the court have nothing to do with inquiries into the disposition which the creditor may make of his debt, after the money has reached his hands; and the court are not to award damages upon such uncertain calculations as to the future disposition of it. But that is not, it is respectfully submitted, the point in controversy. The question is, whether, if a man has undertaken to pay a debt in one country, and the creditor is compelled to sue him for it in another country, where the money is of less value, the loss is to be borne by the creditor, who is in no fault, or by the debtor, who by the breach of this contract has occasioned the loss. The loss, of which we here speak, is not a future contingent loss. It is positive, direct, immediate. The very rate of exchange shows, that the very same sum of money paid in the one country is not an indemnity or equivalent for it, when paid in another country, to which, by the default of the debtor, the creditor is bound to resort. Suppose a man undertakes to pay another $10,000 in China, and violates his contract; and then he is sued therefor in Boston, when the money, if duly paid in China, would be worth at the very moment twenty per cent. more than it is in Boston; what compensation is it to the creditor to pay him the $10,000 at the par in Boston? Indeed, I do not perceive any just foundation for the rule, that interest is payable according to the law of the place, where the contract is to be performed, except it be the very same, on which a like claim may be made as to the principal, viz. that the debtor undertakes to pay there, and therefore is bound to put the creditor in the same situation, as if he had punctually complied with his contract there.

It is suggested, that the case of bills of exchange stands upon a distinct ground, that of usage; and is an exception from the general doctrine. I think otherwise. The usage has done nothing more than ascertain, what should be the rate of damages for a violation of the contract generally, as a matter of convenience and daily occurence in business, rather than to have a fluctuating standard, dependent upon the daily rates of exchange, exactly for the same reason, that the rule of deducting one third new for old is applied to cases of repairs of ships, and the deduction of one third from the gross freight is applied in cases of general average. It cuts off all minute calculations and inquiries into evidence. But in cases of bills of exchange drawn between countries, where no such fixed rate of damages exists, the doctrine of damages, applied to the contract, is precisely that which is sought to be applied to the case of a common debt due and payable in another country; that is to say, to pay the creditor the exact sum which he ought to have received in that country. This is sufficiently clear from the case of Mellish v. Simeon, 2 H. Bl. 378, and the whole theory of re-exchange.

My brother, the late Mr. Justice Washington, in the case of Smith v. Shaw [Case No. 13,107], which was a suit brought by an English merchant on an account for goods shipped to the defendants' testator, where the money was doubtless to be paid in England, and a question was made, whether, it being a sterling debt, it should be turned into currency at the par of exchange, or at the then rate of exchange, held, that the debt was payable at the then rate of exchange. To which Mr. Ingersoll, at that time one of the ablest and most experienced lawyers at the Philadelphia bar, of counsel for the defendant, assented. It is said, that the point was not started at the argument, and was settled by the court suddenly, without advancing any views in the support of it. I cannot but view the case in a very different light. The point was certainly made directly to the court, and attracted its full attention. The learned judge was not a judge accustomed to come to sudden conclusions, or to decide any point which he had not most scrupulously and deliberately considered. The point was probably not at all new to him; for it must frequently have come under his notice in the vast variety of cases of debts due on accounts by Virginia debtors to British creditors, which were sued for during the period in which he possessed a most extensive practice at the Richmond bar. The circumstance that so distinguished

a lawyer as Mr. Ingersoll assented to the decision, is a farther proof to me, that it had been well understood in Pennsylvania to be the proper rule. If, indeed, I were disposed to indulge in any criticism, I might say, that the cases in 4 Johns. 125, and 20 Johns. 102, do not appear to have been much argued or considered; for no general reasoning is to be found in either of them upon principle, and no authorities were cited. The arguments and the opinion contain little more than a dry statement and decision of the point. The first and only case, in which the question seems to have been considered upon a thorough argument, is that in 8 Pick. 260. I regret, that I am not able to follow its authority with a satisfied assent of mind. But in the present case, it strikes me, that the circumstances do not require me to dispose of the more general question, although it is impossible not to feel, that it is fully before the court. My opinion is, that, in the present case, the advances being made in Massachusetts, if the goods sent to Trieste did not fully reimburse the amount, the balance was properly due and payable in Massachusetts. There is not the slightest evidence to prove, that the advances were to be repaid at Trieste, if the consignment did not fully reimburse them. In truth, neither party contemplated the probability, I had almost said the possibility, of the fund not being more than adequate to repay all the advances. The contract, then, appears to me to be in substance this, that the creditors shall be at liberty to reimburse themselves from the proceeds of the sales at Trieste, for the advances. Any personal obligation to repay the advances, in any other manner was not stipulated for. The parties left the rest to the silent operation of law. And my judgment is, that, upon the just principles of law, applied to the contract, the advances, so far as they should not be reimbursed out of the sales of the cargo, were payable, not at Trieste, but at Boston, the place where they were made. In this view of the matter, I remain of the opinion, which was intimated at the argument, that the plaintiffs are entitled only to the balance due at the par of exchange.