5 WS  21
31 SC ³600

## M'Caraher *against* The Commonwealth.

A recorder of deeds and mortgages, giving a certificate that he has searched
and could find no mortgage, and charging and receiving the fee allowed by law,
is liable on his bond, if it afterwards appear there was then a mortgage on record
by which the party obtaining the search is prejudiced.

The sureties are liable on the bond for all that the principal is.

Though the penalty of an official bond exceeds that directed by Act of Assembly, it is bad only for the surplus; and judgment may be rendered on such bond
for the penalty directed by the Act, and damages assessed for the party aggrieved
within that sum.

ERROR to the District Court for the city and county of *Philadelphia*.

This was an action of debt on an official bond, brought by the
Commonwealth for the use of John Jones against Alexander
M'Caraher, Mark Richards and Joseph S. Riley, in which the
jury found the following special verdict:

On the 27th day of February 1830, the said M'Caraher and the
said Richards and Riley executed a bond to the Commonwealth
of Pennsylvania in the sum of $4500, conditioned for the faithful
performance, by said M'Caraher, of the duties of the office of
recorder, as aforesaid, according to the Act of Assembly, &c.

BOND.

*Pennsylvania, ss.:*

Know all men by these presents, that we, Alexander M'Caraher, Mark Richards and Joseph S. Riley, are held and firmly
bound unto the Commonwealth of Pennsylvania, for the use
thereof, in the sum of $4500, lawful money, to be paid to the said
Commonwealth, to the which payment well and truly to be made
and done, we bind ourselves jointly and severally, for and in the
whole, our heirs, executors and administrators, firmly by these
presents.   Sealed with our seals, dated the 27th day of February
1830.

Whereas the said Alexander M'Caraher has been duly appointed recorder of deeds in and for the city and county of Philadelphia, by commission from the Governor of this Commonwealth,
bearing date the 22d day of February 1830: Now, the condition
of this obligation is such, that if the above bounden Alexander
M'Caraher shall and does well and truly and faithfully, in all
things, execute and perform the duties of the said office according
to law, and shall also, well and faithfully account for and pay over
into the State treasury, all public moneys which shall come to his

, [M'Caraher v. The Commonwealth.]

hands from time to time, during his continuance in the said office, and also shall, when thereunto lawfully required, deliver up the records and other writings with the seals, to the said office belonging, safe and undefaced to his lawful successor therein, then this obligation to be void, or else to be and remain in full force and virtue.

Sealed and delivered in presence of us,

| Henry D. Stown, | A. M'CARAHER, [L. S.] |
| James M'Caraher, | MARK RICHARDS, [L. S.] |
| | JOSEPH S. RILEY. [L. S.] |

After the making of the said writing obligatory, and while the said M'Caraher was recorder of deeds as aforesaid, the above named John Jones being in treaty for the purchase from one Henry Steel and Patience his wife, of a certain lot of ground and brick messuage thereon erected, situate on the east side of Delaware Twelfth street, in the district of Moyamensing and county of Philadelphia, did on the 26th day of November 1833, through his agent, Mr Isaac Elliott, request the said M'Caraher, then being recorder as aforesaid, to certify whether there remained on record unsatisfied any mortgage or mortgages on the said premises, or any part thereof, given by Isaac Norris, Henry Steel, or Patience M. Steel, since April 1st, 1833. The said M'Caraher, as recorder aforesaid, did, on the 26th day of November 1833, give to the said John Jones a certificate under his hand and seal of said office, and for the same received from him a fee of 75 cents, stating, that on searching the records of mortgages for the city and county of Philadelphia, he did not find any unsatisfied mortgage of the said premises by Isaac Norris, Henry Steel, or Patience M. Steel, since 1st April 1833.

### CERTIFICATE.

" All that lot of ground and brick messuage thereon erected, situate on the east side of Delaware Twelfth street, at the distance of 34 feet southward from the south side of Bedford street, in the township of Moyamensing and county of Philadelphia, containing in front on Twelfth street 17 feet, and in depth 58 feet 6 inches, more or less."

Please to certify whether there remains on record unsatisfied, any mortgage or mortgages on the above described premises, or any part thereof, given by Isaac Norris, Henry Steel, or Patience M. Steel, since April 5th, 1833.

To ALEXANDER M'CARAHER, ESQ., *Recorder.*

On searching the records of mortgages for the city and county of Philadelphia, I do not find any unsatisfied mortgages of the premises, by Isaac Norris, Henry Steel, or Patience M. Steel, since April 1st, 1833.

[75 paid. Seal.]    Witness my hand and seal of office, the 26th November 1833. A. M'CARAHER, *Recorder.*

[M'Caraher v. The Commonwealth.]

After receiving this certificate and confiding therein, to wit, on the 27th day of November 1833, the said John Jones purchased the said premises from the said Henry Steel and Patience M. Steel, by deed bearing date the day and year last aforesaid, for the consideration of $600, subject to a rent charge of $23, as and for premises free from any unsatisfied mortgage by said Isaac Norris, Henry Steel, or Patience M. Steel. At the time the said certificate was so given, there was, in fact, on the records of mortgages for the city and county of Philadelphia, an unsatisfied mortgage of the said premises, given by the said Henry Steel and Patience M., his wife, to Isaac Norris, Esq., bearing date the 20th day of September 1833, and recorded on the same day in the office for recording deeds, &c. for the said city and county, in mortgage book A. M., No. 16, p. 680, to secure a bond given by said Henry Steel to the said Isaac Norris, in the penal sum of $582, conditioned for the payment of $291 on the 1st day of January next, after the date thereof. The said mortgage, before, at and after the giving the said certificate, and until as hereinafter mentioned, remained unsatisfied on the said premises.

The said Isaac Norris, afterwards, to wit, on the 21st day of February 1835, entered judgment on said bond, and under the warrant of attorney accompanying the same, in this court, to December term 1834, No. 402, and afterwards to September term 1835, No. 229, in this court, sued out a *scire facias* on the said mortgage, and obtained judgment and execution thereon, under which the said premises were advertised to be sold by the sheriff, on the 26th November 1838. Whereupon, the said John Jones, on the 26th day of November 1838, and before any sale thereof, paid to the sheriff the sum of $411.72, the amount of the said judgment on the mortgage, with interest and costs of suit, and brought this action to recover from the said M'Caraher and his sureties in the official bond above mentioned, the amount of damages sustained by him, by reason of the omission to certify the said mortgage as above set forth. Notice was given by the said John Jones to said M'Caraher of the said mortgage, on the 6th of February 1835, and the judgment and execution thereon, on the 22d of November 1838.

And the jury say that they are ignorant, in point of law, on which side they ought, upon these facts, to find the issue. That, if upon the whole matter, the court shall be of opinion that the plaintiff is entitled to judgment, then they find for the Commonwealth, in the sum of $4500, and for the said John Jones, in the sum of $459.51, with 6 cents damages and costs; but if the court are of a different opinion, then they find for the defendants.

The court entered judgment for the plaintiff, and the defendants assigned it for error: because,

1. The facts found by the jury were insufficient to create any liability on the part of defendants, Riley and Richards.

2. There was nothing in the facts found by the jury, which amounted to a breach of the condition of the bond declared upon.

3. Because the omission, by M'Caraher, of the mortgage from his certificate of search, mentioned in the special verdict, was not such a breach of his official duties as would render him or his sureties liable on the bond.

4. Because it is not one of the duties of the office of Recorder of deeds, to certify whether there are any unsatisfied mortgages of record in the said office.

5. Because an engagement to make such certificate, if binding at all, is a mere personal contract, and not an official duty, on the part of the Recorder.

6. Because the omission of M'Caraher to certify as aforesaid, if it even rendered him liable, would not warrant a judgment against him in this action, the said action being joint against himself and sureties.

*Markland* and *Broom*, for the plaintiff in error.

The sureties are not liable, if the Recorder honestly searches and cannot find the mortgage in the index.  The office and duty of the Recorder is only to certify the records found in the office, and give fair copies and exemplifications of them; and for this he is responsible.  He is not bound to certify whether any can be found there, nor is he entitled to a fee for certifying that none could be found there.  If the party wishes to be satisfied whether or not a mortgage is recorded, he may search for himself.  The only certificate the officer can legally charge for, is the certificate of the copy of a record found in the office.  The liability of sureties is not to be extended by implication.  *Hurlst. on Bonds* 108; 9 *Wheat.* 680; 15 *Peters* 208; 3 *Harr. & M'Henry* 216; 1 *Bar. & Cress.* 491; *Theob. Prin. & Surety* 72.

The only Act in force when this bond was taken, the Act of 19th March 1777, directs that the bond of the Recorder of Deeds for the city and county of Philadelphia shall be in £1500, which is equal to $4000.  This bond is in $4500, and, not being taken according to the directions of the Act, is void.  It cannot be considered a voluntary bond.

*M'Call, contra,* insisted that the last point was a surprise upon him, not being assigned for error, nor taken in the court below; but contended the bond was good for the amount directed by the Act; the surplus might be rejected.  *United States* v. *Brown*, (*Gilp.* 155); 8 *Mass.* 153.

As to the principal question, it is clear from the fee-bill that to search is the duty of the Recorder; for it gives a fee for recording and exemplifying deeds and other writings, and also for every search, when no other duty is performed for which fees are given. And in *Harrison* v. *Ellmaker*, (4 *Rawle* 162), it is said the Recorder

is entitled to a fee for merely certifying the date of a deed.　The sureties are bound for whatever it is the duty of the Recorder to do.　15 *S. & R.* 100; 6 *Dall.* 95; 6 *Binn.* 292; 12 *S. & R.* 313.

The opinion of the court was delivered by

SERGEANT, J.—The responsibility of the sureties in this case cannot be distinguished from that of the principal.　The condition of the bond is the same as to all the obligors, that is, for the faithful discharge of duty in the office of Recorder of Deeds; and whatever is a breach of condition as to the Recorder, is equally so as to the other obligors.　*Farmers' Bank* v. *Boyer*, (16 *S. & R.* 50).　This raises the question whether the Recorder, by giving a certificate that he has searched and could find no mortgage, and charging and receiving the fee allowed by the Act of Assembly in such case, has violated the condition of the bond, when it afterwards appears that a mortgage then existed on the record, by which the party obtaining the search has been prejudiced.　I state it thus particularly, because, in the present instance, there are no facts mentioned from which it might be argued, either from the position or conduct of the party aggrieved, or of the officer, that the liability of the latter was removed or extenuated in consequence of any peculiar circumstances attending the transaction.

Neither the Acts of Assembly requiring official bonds, nor the bonds themselves, define the details of duty appurtenant to an office to which the party is appointed, nor indeed could it well be done. It is obvious that the extent of duty in an office must vary with its nature, and perhaps there is not one in which these details could be expressly defined and set out.　The Act of Assembly contents itself with imposing an obligation to perform the duties of the office, leaving the character and bounds of those duties to be settled by the nature of the office, by general principles of convenience, policy and public security, by usage, and by such matters of express legislation as may be connected with the subject.　The party seeking the office (and universally, we may say, these offices are sought for the emoluments attached to them), takes it with the condition annexed of giving bond with sureties conditioned, in general terms, to fulfil and discharge all the duties annexed by law to the office; and upon such bond being prepared and sent to him by the Executive Department, executes and returns it, thereby subjecting himself to the liabilities involved by law in the exercise of the office, whatever they may be.　Without so doing, he knows that he cannot enter on the duties of the office, or hold the appointment.

What, then, are the duties annexed by law to any office, which the officer thus undertakes to discharge faithfully?　The solution of this question must result, I think, from a consideration of the nature and character of the office, and a determination of what constitute essential or vital parts of it; for thus much, at least,

V.　— 4　　　　　　　C

[M'Caraher v. The Commonwealth.]

may be said, that whatever constitutes an essential or vital part of the office, so that without it the design and object of the office cannot be attained, must necessarily be ranked amongst the duties which the officer is bound to fulfil: and as the character and design of different offices are different, the duties of the officer vary accordingly — that being an appropriate and necessary duty in one office, which is of no importance, or altogether unknown, in another.

To limit, however, our present inquiry to the office of Recorder of Deeds and Mortgages, let us examine the object and design of the office. This office, though unknown to the English common law, has been coeval with our province and state; being part of the laws agreed upon in England between William Penn and the first purchasers in 1682, and reduced, after various efforts, to a regular system by the Act of 1715, which continues to be the foundation of our code on the subject; and this office may be said to form the pivot on which all our titles to real estate turn. The design of it has been to furnish a permanent record of all titles and muniments of real estate, and many of personal, to which parties may have recourse for exemplifications that have the same force and efficacy as the originals. But there is another equally, if not more, important design, which is, to enable all persons to obtain knowledge of the state of titles to real estate by deeds and conveyances, and also of charges and encumbrances existing on them by way of mortgage. Hence it has been the practice of conveyancers and others, I presume from its earliest establishment, to cause searches to be made for existing conveyances, mortgages and encumbrances; and in fact, without such search, there would be no safety, since titles by mortgage depend, for their efficacy among us, not less on their due execution, than on the regularity and priority of their recording. Mortgages have priority only from the date of recording; and who would take a mortgage as a security for money, if he could not be certain as to the existence of prior encumbrances?

Search, then, is of the essence of the office—indispensable to effect the design of its establishment, and to give certainty and security to the community. That being the case, who is to make that search? Surely not any and everybody that may desire it. That has never been the practice; and indeed, especially in such an office as our recording office here, it would be impracticable from the throng of applicants, and would moreover subject the records to many hazards, from carelessness, wantonness, and even fraudulent design. The Recorder and his confidential clerk have, therefore, usually made the searches and given a certificate; and for these the fee-bill allows him a fee. No stronger evidence can be given of the duty of an officer, than that the law gives him a fee for the performance of it.

If the search, then, be within the prescribed duty of the Re-

[M'Caraher v. The Commonwealth.]

corder, is he not bound to perform it faithfully? or, in other words, to make a true search, and give a true certificate? and is he not responsible if he does otherwise? Or can it be maintained that, though he is bound to search, yet the party must take the certificate as he gets it—the officer not being liable for its incorrectness, whatever prejudice may ensue? Pursuing the same process of reasoning as before, viz., the design and object of such an office, it seems to me it is only by holding the officer responsible, at least, *primâ facie*, for an untrue certificate, that security can be obtained. Who could rely on a search made in private, and a certificate of the result, if there were no responsibility by the officer whether it were true or false? It would be a temptation to indolence and carelessness. Purchasers, creditors and mortgagees, would leap in the dark, taking the risk of latent transfers or encumbrances. The usefulness of the office would be nearly destroyed. Every consideration of policy and security to titles, requires the exaction of the utmost vigilance in the officer. In this the law demands no impossibility or insuperable difficulty. Experience has proved that, whilst the public have been secured under the existing practice, the instances of resort against the officer are rare. If there be a risk to the officer attending this rule, *qui sentit commodum sentire debet et onus*. More care and vigilance ought to be and are required of officers appointed by the law to guard the interests of the community, and who are paid for it by them, than in ordinary cases. As to the form of the certificate that the officer could not find a mortgage, this is, in common understanding and effect, a certificate that none existed; since, if it were there, it was his duty to find and certify it, at least till some good reason is given why he did not. We are therefore of opinion that there was no error in rendering judgment for the plaintiff.

A new objection has been raised on the argument here, which was not mentioned in the court below, nor is it contained among the errors assigned; and in such case the rule is, that unless it goes to the merits, we will not reverse on account of it. That exception is, that the Act of 14th March 1777 directs the Recorder of Deeds to give a bond in the sum of £1500, (equal to $4000); whereas the present bond is in the penal sum of $4500, and therefore not in conformity with the Act, and void. In this case it makes no difference in the result, whether the true sum is $4000 or $4500, as the damages recovered are much less than the smallest of these.

Under what authority the Secretary of the Commonwealth took the bond in this sum, I have not been able, after inquiry, to ascertain. But we are of opinion that if it exceeds the amount directed by the Act, it is good for that amount, and void only for the residue. *United States* v. *Howell*, (4 *Wash. C. C.* 620); *Commonwealth* v. *Laub*, (1 *W. & S.* 263); *United States* v. *Brown*, (*Gilp.* 155); 8 *Mass.* 153.

Judgment affirmed for $4000 penalty.