In the Matter of the Final Judicial Settlement of the Account of Proceedings of LEONARD E. TEED, as Administrator c. t. a. of ELISE VOELTER HESS, Deceased.

Surrogate's Court, Westchester County, March, 1923.

**Executors and administrators — accounting — will executed in Germany — payment of legacies — bequest of marks payable in gold.**

A bequest of money is payable in coin and not in paper currency.

Where one of two equally convenient methods of distribution would result in an unequal and inequitable distribution and the other in an equal and equitable distribution, the executors should adopt the latter method.

Where the will of testatrix executed in Germany, the land of her birth, about two months after the beginning of the World War, at which time the paper mark had not suffered any depreciation, gave her entire estate to a named legatee subject to the payment of three general legacies of 5,000 marks each and one

for 3,000 marks, it will be held that it was her testamentary intention to give the legatees marks of the value she had always known, and existing at the time of the making of her will.

Upon a proceeding for the settlement of the account of the administrator c. t. a. and for a construction of the meaning of the word " mark " it appeared that the entire estate was in this country and that all the legatees under the will were in Germany.   It also appeared that at the death of decedent on January 4, 1920, in this country, there were in her estate German war bonds aggregating 12,000 paper marks, which together with seventy-nine dollars and forty-five cents were applied to the payment of the four legacies at the prevailing rate of exchange of paper marks at various times during 1921 and 1922, the legatee in each instance giving a receipt and general release to the administrator.   While on the return day of the citation no one appeared in opposition to the account as filed one of the legatees in a letter addressed to the clerk of the court protested that her legacy had been paid in depreciated currency and demanded payment thereof in gold marks.   *Held*, that the word " mark " as used in the will meant gold or silver marks.

As the sole residuary legatee will receive the balance of the estate in money of the United States, payment of the four legacies in gold marks will cause no discrimination and such construction does not offend against public policy or any rule of law.

PROCEEDING to settle accounts of administrator with the will annexed.

*George S. Ludlow,* for administrator c. t. a.

*Richard A. Geis,* for residuary legatee.

SLATER, S.   On October 12, 1914, the decedent executed her will in Germany and lodged it for safekeeping with a notary public. Shortly thereafter she returned to this country and continued to reside here until her death on January 4, 1920.   The will was admitted to probate on the 15th day of July, 1920, and letters of administration c. t. a. were issued October 1, 1920.   The will bequeathed the entire estate to a legatee, subject to the payment of four legacies aggregating 18,000 marks in these words:

" I appoint my cousin Bertha Sammet nee Melchior, wife of George Sammat, of Heilbronn, as my sole beneficiary (heir).

" Subject to the payment of the following legacies:

" 1. To my cousin Antonie Holzle nee Voelter, of Schwaikheim, 5,000 Marks.

" 2. To my cousin Emma Kivinius nee Melchior, of Gannstadt, 5,000 Marks.

" 3. To my cousin Elise Haller nee Melchior, of Zuffenhausen, 5,000 Marks.

" 4. To the City Community of Pforzheim for the education of poor girls 3,000 Marks.

" In case any of the foregoing persons pre-decease me, their descendants shall take their place."

The entire estate is situated in this country and all the legatees

under the will are residents of Germany. There were in the estate of the decedent at the time of her death German war bonds aggregating 12,000 paper marks, and these bonds, together with $79.45 in cash, were applied to the payment of the four legacies in question at the prevailing rate of exchange of paper marks at various times during 1921 and 1922. In each instance the legatee gave a receipt and general release to the administrator. Upon the completion of the settlement of the estate the administrator filed his account and petition for the final settlement thereof and the citation thereon was returnable on November 14, 1922. On the return day no one appeared in opposition to the account as filed, but one of the legatees addressed a letter to the clerk of the court protesting that her legacy had been paid in depreciated currency and demanding that the same be paid in gold marks. Whereupon, this proceeding was instituted for a construction of the will in regard to the meaning of the work " mark."

When we consider that the testatrix was of German birth and that the will was executed in Germany about two months after the beginning of the World War, at which time the paper mark had not suffered any depreciation, we cannot doubt that when the testatrix bequeathed these legacies in marks she meant and intended to give the legatees marks of the value she had always known, and existing at the time of the making of her will. She must have intended to give each one of the legatees a certain definite portion of her estate. She certainly did not intend to give to the residuary legatee her entire estate. There can be no doubt that she likewise intended to give, in each instance, what she considered a substantial legacy, for 5,000 marks in any of the currency of Germany in October, 1914, was worth approximately $1,150. It cannot be thought that she ever had in mind, or considered a possibility that the time would ever come when these legacies would be paid in marks at a cent apiece and that later the paper mark would so depreciate that 50,000 could be bought for a dollar which would make the value of these legacies at 5,000 paper marks equal to ten cents.

It is unnecessary to consider whether the intent of the testatrix at the date of the will shall govern. This is one of the cases where it could be so held. However, the court will undertake to decide what the testatrix meant by the word " mark " as used in her terms of gift at the date of her death. There have been, and there is now the paper mark, the silver mark and the gold mark, used as German currency. The question is: Shall the word " mark " as used in the will be construed as intending the gold mark, or silver mark, which in 1920, and to-day is of the same

value as formerly, or shall the word be construed to mean the depreciated paper mark?

All the gifts are in the nature of general legacies. If the legacies were specific the rule is established that a will speaks as of the time of its execution. *Matter of Delaney*, 133 App. Div. 409. The residuary legatee takes all the property in United States money, except four legacies to be paid in marks, given to other legatees.

Where two equally convenient methods of distribution can be adopted by executors, but one would result in an unequal and inequitable distribution, while the other will result in an equal and equitable distribution, the latter method should be adopted. *Wynkoop's Estate*, 53 Penn. Super. Ct. 472. Unless a particular mode of paying a legatee, or distributee, is expressly prescribed by the will, or by statute, payment may, in general, be made to him in any manner which gives him his due proportion of the estate. 24 C. J. 484. There is no duty on the part of the administrator to pay them as cheaply as possible as would be the duty of a receiver, or a trustee to settle the claim against their estates.

The administrator is not only the personal representative of the decedent, but is also to a very large extent the representative of the creditors and of the legatees, or distributees. He occupies a position of trust with respect to those who are interested in the estate and is a trustee in the broadest sense, although not in the general acceptation of the term. 23 C. J. 1170; *Agne* v. *Schwab*, 123 App. Div. 746.

The payment of the four legacies in the cheapest manner possible would mean their payment in paper marks which would practically reduce their gift to nothing and correspondingly increase the interest of the residuary legatee to practically the entire estate.

Notwithstanding the peculiar phraseology, we do not understand that there is any distinction of class between the sole beneficiary and the legatees. Their relation would seem to be the same as if the legacies had been bequeathed first and then the residuary estate, as in our form of will. But, if there is any distinction, it would seem to be in favor of the four legatees, for their legacies are made a first charge on the estate.

In *Lowry's Administrator* v. *Newsom*, 51 Ala. 570, the decedent died in 1873 possessed of a certain sum in gold and a certain sum in currency, distributable to the widow and next of kin, and a decree was entered directing the distribution of these sums separately. The court said: " No other decree than one distinguishing between, and distributing these sums separately, would have met the justice of the case. A decree against him for an aggregate sum in dollars which he could have paid in legal tender currency would have

Surrogate's Court, Westchester County, March, 1923.     [Vol. 120

enabled him to make a profit from the assets to which he was not in law or morals entitled. The assets in his hands belonged to the distributees and were properly decreed to them in specie." In line with this argument if the administrator is not permitted to pay in depreciated currency for his own profit, he is in no better position to do the same thing for the benefit and profit of the residuary legatee.

A bequest of money is payable in coin and not in paper currency. *Graveley* v. *Graveley*, 25 S. C. 1.

Originally the term "mark" appears to have been used to designate a unit of weight, most commonly of gold or silver. In 1524 the Cologne mark was made the standard weight for gold and silver. In Anglo-Saxon times the term "mark" was used to designate money of account. In the nineteenth century the mark was a common small coin among the German states varying considerably in the different parts of Germany. In 1873 the gold mark of 100 pfennigs was adopted as the monetary unit of the German empire. It is valued at $0.23821 American money. Paper marks in later years have become currency. The gold and silver mark have not depreciated, the paper mark has withered into little or no value at the present, and of greatly depreciated value at the death of the testatrix.

Special words should be construed in accordance with the intention of the testator. Whether a word is to be used in its technical or more general sense is to be determined by considering which will better effectuate the testator's intention. *Blackwell* v. *Blackwell*, 15 N. J. L. 386. In determining the testator's intent we must assume that he contemplated the reasonable and natural construction of the language used rather than that which would produce an absurd and illogical result. *Matter of Farmers L. & T. Co.*, 189 N. Y. 202, 205.

The construction that the four legatees should be paid in gold marks will cause no discrimination, as the residuary legatee will receive the balance of the estate in United States money.

The court concludes that the word "mark" as used in the will means a coin, either of silver or gold German currency, and that it was the intention of the testatrix to give to the four legatees German marks of their value in silver or gold. Any other construction would nullify the terms of the will, creating the gifts to the four legatees. A payment in depreciated currency was never contemplated and equity will not permit it to be done. This construction has in its favor the balance of reasons and probabilities. Upon consideration of the facts, an inspection of the will, the intent is apparent that the testatrix intended no discrimination,

especially as great as would exist here if German paper currency is paid to the legatees, and such construction does not offend against public policy, or any rule of law. *Robinson* v. *Martin,* 200 N. Y. 159, 164.

Let decree be entered to meet these views.

Decreed accordingly.