THE CHEMICAL NATIONAL BANK et al., Plaintiffs, *v.* ROBERT McCOSKRY BUTT et al., Defendants.

Supreme Court, New York County, July 31, 1924.

**Wills — construction — provision in will requiring payment of annuity of 15,000 francs — legatee is entitled to be paid in gold francs.**

A will, which by its terms provides for an annuity of 15,000 francs, for the term of a legatee's life, will be construed to mean that the decedent intended that payments should be made at the par value of the gold franc rather than in paper francs at the rate of exchange.

REFERENCE in action by executors for a judicial settlement of their accounts and for a construction of decedent's will.

*Roosevelt, Kobbe & Thatcher* (*Edward J. McCabe,* of counsel), for the plaintiffs.

*Murray Hulbert* (*John F. Conway,* of counsel), guardian *ad litem,* for Lawrence Havemeyer Butt, Jr., and Madeleine Frances Butt, defendants.

*Wilder, Ewen & Patterson* (*William M. Patterson,* of counsel), for Madeleine Renard Roger, defendant.

ALLEN, Referee. This reference is one to hear and determine. The action is by executors for a judicial settlement of their accounts and a determination of the issues requires a construction of the decedent's will, which contains, amongst other provisions, the following:

" *Second.* I bequeath to my relative, Madeleine Renard Roger, wife of Colonel Joseph Roger, of the French Army, an annuity for the term of her life, of fifteen thousand francs, unless, before my death I shall have otherwise arranged to fulfill my promise so to provide for her; and I direct that my executors set aside, and retain so long as such annuity shall be payable, a sufficient amount of the principal of my residuary estate to produce the income therefor."

The executors have paid so much of the annuity as has accrued from time to time in francs that have been referred to as paper or commercial francs, which they have purchased at current rates of exchange.

The legatee interposes the objection that she is entitled to be paid at the par value of the franc, which is nineteen and three-tenths cents. The value of the paper franc is fluctuating and at the time of trial was five and three-tenths cents.

The guardian *ad litem* for infant remaindermen asks that the

payments, as made by the executors in paper francs at the rate of exchange, be sustained.

A judgment judicially settling the accounts of the executors can be entered only upon the determination of this issue, which is the only issue remaining between any of the parties to the action.

It is the duty of this court to carry out the fair purpose and intent of the testator as expressed in the will without resort to anything else than the will, the condition of the estate and the surroundings of the testator. Extraneous and parol evidence may be admitted, however, to explain a will when there is a latent ambiguity arising *dehors* the instrument. Such extraneous evidence may never be admitted to contradict, enlarge or vary the written words of the will. *Matter of Silsby,* 229 N. Y. 396; *Matter of Will of Keleman,* 126 id. 73; *Williams* v. *Jones,* 166 id. 522; *Brown* v. *Quintard,* 177 id. 75.

The decedent made this will less than a month before his death. He had lost a beloved son but a few weeks before and the shock of that loss appears to have brought on the illness from which he died. He was sixty-three years of age and during the latter part of his life had not been engaged in any business and might well be described as a wealthy, socially prominent, retired gentleman. His personal estate amounts to approximately $1,000,000.

The will first disposes of the decedent's jewelry and personal effects to his son and a grandson. The next provision of the will is the annuity now under consideration. The residuary estate is then disposed of upon trusts for his remaining son and the widow and children of his son who had recently died, with remainders over to some of them and their descendants, and in case of there being none to succeed to such remainders to the Rensselaer Polytechnic Institute of Troy, N. Y.

The decedent's surviving son and grandchildren are persons of independent means of their own, without regard to the income provisions of this will.

The legatee of this annuity of 15,000 francs is a woman about forty years of age, and is a second cousin of the testator. For many years prior to his death she was not only the recipient of his bounty in substantial sums of money at regular intervals, with many other gifts of money at irregular intervals, but she was also the object of his most tender solicitude. Upon her marriage he had settled an annuity upon her, to be superseded by such provision as he should make for her in his will. The amounts of some of these benefactions have been disclosed and they were of substantial sums. They were given for current spending by her personally and not to be saved up against the unknown contingencies

of the future. This feeling of deep personal interest and attachment for her continued to the last and expression of it was attempted even when his bodily infirmities were such that it was almost impossible for him to pen a line.

The decedent's property was all in the state of New York, where he resided, except for a check account with a banking firm in Paris.

The contention is made that the will is not ambiguous and that a franc is a gold franc of the par value of nineteen and three-tenths cents. The executors and guardian *ad litem* assert, on the other hand, that there is another franc — a paper franc, which is the commercial and the only franc recognizable in any business transaction at the present time. That raises a question of identification and would be a case of latent ambiguity.

The evidence is that the gold franc is par and that its rate of exchange is stable at nineteen and three-tenths cents, and that the rate of exchange on the paper franc has in recent times been fluctuating from nineteen and twenty-three one-hundredths cents in 1915 to three and forty-two one-hundredths cents in March, 1924, with appreciation to five and three-tenths cents in June of the same year.

The question involved here is not the date at which foreign money shall be computed in dollars. Such a computation would be made upon the rate of exchange, *i. e.*, a pound sterling of English money would represent a definite number of dollars on any particular date in accordance with the rate of exchange on that day. There are some quite recent examples of such cases. *Sirie* v. *Godfrey,* 196 App. Div. 529; *Orlik* v. *Wiener Bank Verein,* 204 id. 432; *The Verdi,* 268 Fed. Rep. 908.

The question here is: Shall the rate of exchange be applied to the paper franc or to the gold or par franc? The rate of exchange for the paper franc is one thing, and the rate of exchange for the gold franc is an entirely different thing. Rate of exchange is based on the gold dollar as the standard, whether we are seeking the rate on the paper or on the gold franc.

The paper franc when measured by par is below par, and its fluctuations and depreciations are always shown in the extent to which they have fallen below par.

This will is the will of a resident of this state, and the estate is being administered here. The annuity has been created here and is payable here. A franc is not money of the United States, and the bequest of francs must be translated into dollars in order that

37

the estate, which consists only of dollars in this jurisdiction, may pay the legacy. This may be easily done as soon as we find out which one of the two things of the same name but of different values the testator referred to — the paper franc or the gold franc.

This legacy is an annuity. It is to continue for the term of the legatee's life. The legacy is the first one (except of the testator's jewelry and personal effects) given in the will and the only other legacy given by the testator outside of the disposition of the residuary estate as such. The situation disclosed by the will fairly suggests that the legacy was for personal expenses and something to at least improve conditions for this woman relative, " wife of Colonel Joseph Roger of the French Army." The suggestion contained in these words is not one of affluence in the legatee's household. This permits the conclusion that an annuity to a beneficiary of whom the testator was very fond could not reasonably mean 15,000 francs of a fluctuating and depreciable value which in one year would represent $2,884.50 and in the next year only $513, which are sums representing the extreme actual fluctuations proven upon the trial.

The will is the will of the testator. We should assume that he meant a definite and substantial and not an indefinite or nominal benefit to the legatee. If the paper franc should again fall as it has quite recently there is no violence in considering the possibility that it might fall to nothing, as has the German mark. The testator did not mean that the legacy could become worthless. An annuity connotes stability and perpetuity for the prescribed time. An annuity recurs every year. The gold franc is standard and stable. It alone assures recurrence and precludes disaster. The paper franc whenever it is below par is disaster in itself, and it is one whose future cannot be forecast, varying according to circumstances and contradicting the definite character and soundness of so good and certain a thing as an annuity. The paper franc is merely a promise to pay coin and is dependent upon political and economic conditions as also upon the security in coin which is on reserve to make that promise good.

This legatee will also be adversely affected by payment in paper francs for the period covered by this accounting to the serious extent of more than seventy per cent reduction below what she would receive if paid at par. The net estate, as already stated, is approximately a million dollars. No one's support or education or maintenance will be impaired by paying this annuity at the par value of the franc. The principal from which the annuity is being earned will be kept intact upon a gold standard and ultimately distributed to the remaindermen in gold dollars at par.

Francs whose value is par are necessary for the satisfaction of this

legacy and it will not be satisfied by depreciated paper money whose fluctuations and depreciations are stated only in terms which show the extent to which such paper has fallen below par. The testator meant real francs in coin and not mere paper promises to pay francs rising or falling in value according to circumstances. *Matter of Hess,* 120 Misc. Rep. 372; *Grant v. Healey,* 10 Fed. Cas. 978, No. 5,696.

It would not be in harmony with the situation here existing to ascribe to this fine old gentleman an intention of making a bequest to a near and dear relative to be paid in depreciated and discredited and fluctuating money without his full authority to do so. He intended regularity and recurrence. Fluctuation interrupts regularity and recurrence. Fluctuation contradicts annuity.

It is significant that the executors have set aside the right amount in securities to earn income enough to pay this annuity at par of exchange. It is nearly four times the amount required for payment at the rate of exchange now current. The executors easily equalize matters, not according to any direction of the testator, but by distributing the excess income into the rest of the estate which they happen to hold in trust. It at once becomes interesting to consider what would be the consequences if the residuary estate had been forthwith distributable to legatees instead of being placed with the executors in trust. The testator has provided with great care and detail for contingencies which he contemplated with respect to his residuary estate. He did not provide for any variation of exchange on the franc. If we recognize in the simple directions creating this annuity the franc at the par of exchange, the conduct of the executors in setting aside securities sufficient to earn that amount of income becomes at once justifiable and at the same time we respect the plain inhibition of the testator against holding out an excessively large fund for this annuity; and we also avoid adding to the will the plan upon which the executors are now operating for distributing excess income. That distribution is a matter of three times the magnitude of the annuity itself. The testator provided only for the annuity and it should be rescued by this court from the insignificance which such a stipulation imposes.

The objections will be sustained and a decision may be prepared and presented for signature accordingly.

Ordered accordingly.