## Willing's Estate.

*Decedents' estates—Wills—Annuity bequest in terms of foreign money—Value.*

An annuity of 10,000 francs created by a testatrix, domiciled in Pennsylvania, out of her estate, invested in the United States, will be paid at the value of the franc at the time of the making of the will, or a gold franc, and not in accordance with the present value of the paper franc, under the depreciated rate of exchange.

Argued December 4, 1924. Appeal, No. 264, Oct. T., 1924, by Eleanora Willing Patterson, from decree of O. C. Phila. Co., Jan. T., 1897, No. 264, dismissing exceptions to adjudication in the Estate of Mathilda Lee Willing, deceased. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Exceptions to adjudication. Before VANDUSEN, J.

546, (1925).]	Arguments—Opinion of the Court.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions.	Exceptant appealed.

*Error assigned* was the decree of the court.

*John Hampton Barnes,* and with him *Effingham B. Morris, Jr.,* of *Barnes, Biddle & Morris,* for appellant.— It was the duty of the trustee to pay over 10,000 francs to the annuitant, and when it did that it performed its duty. It was error to hold that the annuity be paid according to the par value of the franc: Saunders v. Drake, 2 Atkyns, 465, 26 Eng. Rep. (68); Wallis v. Brightwell, 2 Peere Williams 88; Phipps v. Earl of Anglesea, 1 Peere Williams 696; Bowditch and others v. Saltyk and others, 99 Mass. Rep. 136; In re Hess's Will, 198 N. Y. S. 573; Lee and another against Wilcocks, 5 S. & R. 48 (1819); Liberty National Bank of New York v. Burr, 270 Fed. Rep. 251; Milligan v. Marshall, 38 Pa. Superior Ct. 60; Page v. Levinson, 281 Fed. Rep. 555; Dante v. Miniggio, 298 Fed. 845.

*Shirley Carter* and *Hampton L. Carson,* and with them *Joseph Carson,* for appellee, cited: Booth v. Ammerman, 4th Bradford's Reports, N. Y. Surrogate Court, A. D. 1856-57 (page No. 133); Wagstaff v. Lowerre, 23d Barbour's Supreme Court Reports, A. D. 1856-57, New York, p. 207; Mullen's Est., 14 W. N. C. 144; Graveley v. Graveley, 25 South Car. 1.

OPINION BY KELLER, February 27, 1925:

Mathilda Lee Willing died testate on February 14, 1896. In her will and all six of its codicils she described herself as "of the City of Philadelphia in the United States of America, now sojourning at Nice, France." She thus classed herself as a citizen of the United States, domiciled and residing in Philadelphia, sojourn-

ing in France. This was recognized in the original grant of letters testamentary in Philadelphia County: Act of March 15, 1832, P. L. 135, 136, section 6; if she had been domiciled in France, the letters issued in this state would have been ancillary or auxiliary: Sayre v. Helme, 61 Pa. 299, 301.

By her will and codicils she devised her residuary estate to The Pennsylvania Company for Insurance on Lives and Granting Annuities, in trust, so far as is here relevant, to pay the income to her granddaughters, Nora Willing, (Eleanora Willing Patterson), and Violet Lee Willing (Morris), for their lives, with remainder to their children, etc., subject to the payment of two certain annuities of 10,000 francs each, the one payable to her nephew, Louis de Potestad, during his life, and after his death to his son for his life; the other payable to her niece, Georgiana L. Featherstonhaugh, during her life, and after her death to her nephew for his life. These annuities are now payable to Robert E. Lee Potestad, residing in this country, and Rupert Featherstonhaugh, residing in England. The question raised by this appeal is whether the annuities are payable at the par value of the franc (gold), 19.3 cents, or at the current exchange value of the paper franc, about 5.3 cents. The court below adopted the former view and awarded each of the annuitants $1,930. Mrs. Patterson, one of the residuary legatees for life, appealed.

When the testatrix wrote her will and codicils, and at the time of her death, the franc was a recognized and stable unit of monetary value, worth 19.3 cents in American money. It was the monetary unit in at least three countries, France, Belgium, and Switzerland, but its value was the same in all. It was as well known as the English pound sterling, $4.86, or the German mark, 23.8 cents. By reason of the issue of vast amounts of paper money in France and Belgium during and following the World War, the value of the paper franc has greatly declined in those countries, just as the same cause has

wiped out the value of the German paper mark and the Russian ruble. The Swiss franc still remains stable, worth approximately 19.3 cents. The appellant frankly concedes that if her position is correct, and the franc should follow the mark into financial worthlessness, the result would be to cancel these annuities and benefit her and her sister to the extent of $1,930 each. We cannot believe that the testatrix contemplated any such result. She was an American citizen, retaining her domicile in this State but had lived in France for many years and had become accustomed to the use of the franc in ordering her life abroad, representing as it did, a stable value in American money. Consequently she used it to designate not only these annuities but all her pecuniary legacies as well. An annuity connotes stability; its use indicates the intention of the testatrix that Louis de Potestad, and after him his son, Robert E. Lee Potestad, should receive every year from her estate the same fixed amount, not subject to variation or change; and this result is obtained if we regard the franc as a standard and definite measure of value rather than a variable medium of exchange. It had, even as a medium of exchange, that standard and stable measure of value at the time the testatrix's will was written and went into effect, and in our opinion it was her purpose and intent to give her nephew and niece, respectively, every year a stable and fixed sum of money, 10,000 francs as she knew them and was accustomed to use them. She knew that her estate was located in America and would be administered in Pennsylvania by a corporation trustee of this State; that payment would be made here, and she evidently had no thought of variations of exchange for she made no provision in her will regarding them. The thought is well expressed by the learned auditing judge, as follows: "In construing the words of a will, it is, according to all the authorities, permitted to consider the circumstances surrounding the testator when the will was made, in order to ascertain the meaning of the

words that he has used. And, in the present case, the testatrix, although an American citizen, had long been resident in France, and, while her property was invested here, her income was received by her and spent in French money. All her pecuniary legacies were expressed in francs, and when she wrote the codicil to her will by which these legacies were given, and at her death, the value of the franc was undoubtedly at the par of 19.3 cents, a condition that has continued until recently, the slight fluctuations in the rate of exchange being so trivial as to be unimportant. The fall in the value of the franc as compared with that of the dollars constituting the estate of the testatrix, was due to a catastrophe which could never have been in the mind of the testatrix, and I cannot avoid the conclusion that when the testatrix bequeathed the legacies or annuities in francs, she intended to give legacies or annuities the value of which was to be measured by the money she was accustomed to use. And perhaps her intention in this respect is even clearer in the case of an annuity than in that of a legacy payable outright once and for all, for when a testator bequeaths an annuity the manifest intention is to give to the annuitant a certain fixed annual sum, and not an income that for one reason or another may fluctuate from year to year. Nor can I see that any injustice is done to the residuary legatees of the income. If these annuities are paid now in francs of par value, or what might be called gold francs, the residuary legatees will receive now, as they always have, the entire income after the deduction of annuities of exactly the same value, and it does not seem to me to be equitable that they should be benefited by the fall in value of the paper franc."

The same question came before the Supreme Court of New York in Chemical Nat. Bank v. Butt, 206 N. Y. Supp. 36, and on facts practically the same as in this case was decided in conformity with our view; the court holding that the will intended payment of the annuity

to be made at the par value of the gold franc and not in depreciated paper francs of fluctuating value, saying: "The testator meant real francs in coin and not mere paper promises to pay francs, rising or falling in value according to circumstances," p. 40. This was in line with the earlier decision of the Surrogate Court of New York in Hess' Est., 198 N. Y. Supp. 573, where an American citizen of German birth, in her will, which she made while she was in Germany, bequeathed certain legacies, expressed in marks, to residents of Germany. After she made her will the value of the paper mark was reduced to practically nothing. It was held that the legacies were payable in gold marks at 23.8 cents, the court holding that "any other construction would nullify the terms of the will......A payment in depreciated currency was never contemplated and equity will not permit it to be done." The case is much stronger as respects an annuity than an ordinary legacy, for it contemplates the continuous payment during the term of the annuity of the same fixed amount.

We do not think cases arising out of contract are of much, if any, help to us, but if to be considered at all the case of Guinness v. Miller, 291 Fed. 769, is nearer in point than most. It was held in that case that an indebtedness by a German subject to an American citizen on a stated account, payable in marks, on recovery in a court of the United States is measured by the value of marks in American money at the time the account was stated and the right to indemnity for its nonpayment accrued. On the same principle the value of the annuity would be measured by the value of the franc in American money at the time the will went into operation and the annuity became effective, the death of the testatrix.

It may be of some help, in considering the effect of a total collapse of the franc, such as has occurred to the mark and ruble, to recall that in early times we had in common use in this country the colonial pound varying in value in the different states and wholly distinct from

the pound sterling.   The Pennsylvania pound was
worth $2.66 2/3 and statutes requiring official bonds
expressed in pounds, (Act of March 14, 1777, 1 Sm. L.
443) refer to the Pennsylvania pound, not the pound
sterling.   It is no longer current money of the Common-
wealth, but the bonds are not on that account discon-
tinued, or worthless.   They are still given, on the basis
of $2.66 2/3 per pound, its par value as of the time
when it was current money: McCaraher v. Com., 5 W.
& S. 21, 27.

We are all of opinion that the learned auditing judge
was right in holding that the annuities should be paid
according to the par value of the franc, or a gold or
coin franc of the value of 19.3 cents.

The assignments of error are overruled and the decree
is affirmed.   Costs to be paid out of the estate.