## Willing's Estate.

*Legacies—Annuities—Payable in francs—Waiver of right to be paid at par value of franc.*

1. Annuitants who have accepted their annuities in francs at the current depreciated rate of exchange over a long period of time when they might have insisted on payment at the nominal or par value of the franc, will be taken to have waived their right to payment on the latter basis, and are not entitled, on a restatement of the account, to demand the so-called arrearages of their annuities prior to those due at the audit of the second account for which, and for which only, demand was made.

*Practice, O. C.—Errors in account—Act of Oct. 13, 1840—Errors in adjudication and decree—Fiduciaries Act of June 7, 1917.*

2. The Act of Oct. 13, 1840, P. L. (1841) 1, provided for the correction of errors in an account, but in practice this was always understood to include errors in the adjudication and the decree of the court, and the Fiduciaries Act of June 7, 1917, § 48, P. L. 447, which included errors in the adjudications and auditors' reports, simply conformed the phraseology of the act to the settled practice which had been followed for many years.

Exceptions to readjudication. O. C. Phila. Co., Jan. T., 1897, No. 264.

The facts appear from the following extract from the readjudication of

GEST, J., Auditing Judge.—The petition for review in this case was dismissed by this court in an opinion by Henderson, J., reported in 7 D. & C. 769, and the Supreme Court, on Jan. 13, 1927, 288 Pa. 337, reversed our decree, reinstated the petition for review and remitted the record with a *procedendo*, in consequence of which I called the case for rehearing on Feb. 10, 1927. The *remittitur* of the Supreme Court was accompanied, according to the usual practice, with a typewritten copy of the opinion of the majority of the court and a copy of the dissenting opinion of the Chief Justice, and, upon consideration thereof, it was my opinion that the majority of the Supreme Court had disposed of the merits of the case in favor of the claims of Robert E. Lee de Potestad and Rupert Featherstonhaugh to the arrearages, as they may be called, of their annuities of 10,000 francs per annum, and, accordingly, in my adjudication filed March 2, 1927, I awarded the balance of income to them on account of said arrearages. Exceptions were filed by Violet Lee Willing Morris and Eleanora Willing Patterson, *cestuis que trust* of the residuary income, and while these exceptions were pending, the official report of the case, as published by the State Reporter, appeared in 288 Pa. 337. As so published, the opinion of the court differed quite materially from the opinion in the *remittitur*, which I had supposed the Supreme Court intended us to follow. Upon the petition of the said Violet Lee Willing Morris and Eleanora Willing Patterson, the case was, on April 4, 1927, remitted to me for further consideration, and upon the same day the prothonotary of the Supreme Court recalled the *remittitur* and returned it with the revised opinion. The case was recommitted to me upon the theory that the Supreme Court, in reinstating the petition for review and awarding a *procedendo*, did not intend to dispose of the merits of the case, but that I, as Auditing Judge of this second account of the trustees, should consider the claims of the annuitants as though they had been presented at the original audit before me on April 9, 1924, together with the restatement of the original account and the testimony as contained in the record and as recited in my adjudication of March 2, 1927.

I would premise that the present status of the case appears to me to be the same, whether the scope of the petition for review should be determined under section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, or under

the prior Act of Oct. 13, 1840, P. L. (1841) 1. The latter act provided in terms only for the correction of errors in an account, but in practice this was always understood to include errors in the adjudication and the decree of the court. Scott's Appeal, 112 Pa. 427, and Nixon's Estate, 239 Pa. 270, illustrate this, though numerous cases might be cited. So when the Act of Oct. 13, 1840, was revised in 1917, the inclusion therein of adjudications and auditors' reports simply conformed the phraseology of the act to the settled practice which had been followed for many years.

It would be a work of supererogation to recite again the facts of the case, which have been repeatedly before this court, and were also commented upon at large by the Supreme Court in both the majority opinion and the dissenting opinion of the Chief Justice. I shall merely state, as the result of my consideration of the case, that, in the first place, I adhere to the view, stated in my original adjudication and in my readjudication, that the annuities of 10,000 francs each are, according to the intention of the testator, payable in francs at the normal or par value of 19.3 cents, and not at the current depreciated rate of exchange, which view was affirmed by the Superior Court in Willing's Estate, 84 Pa. Superior Ct. 546. In the second place, I am of opinion that the annuitants are not at this time entitled to demand the so-called arrearages of their annuities prior to those due on Feb. 14, 1924, for which, and for which only, demand was made at the audit of the second account. No other claim was made, although the annuitants were represented by able and experienced counsel. The annuities falling due before that time had been paid to the annuitants by drafts in francs at the then current rate of exchange, and accepted by them in a long course of dealing, as is irrefutably shown by their receipts and the correspondence offered in evidence. The Supreme Court, in the majority opinion, on page 343, distinctly refers to the possible waiver by the annuitants of these claims, and I am of opinion that whatever claims the annuitants might have had to these arrearages were waived by them.

I do not think that the question presented in this case is one of technical estoppel. It is rather a question of waiver, which, as I understand it, arises where a party having full knowledge of a material fact, the basis of his rights, does, by act of commission or omission, something inconsistent with the existence of his rights or of his intention to rely upon them at a time when he should have asserted them. This constitutes a waiver of the right which cannot afterwards be claimed. In this case, the material fact was well known to the annuitants, namely, that the annuities, as I have said, had been paid to and accepted by them, in francs at the current rate of exchange and not in gold francs; and the time when they should have asserted their claims, if they had any, was, at the latest, at the audit of the account, when there was a fund before the court applicable to their payment. The mere fact that the income account was not stated, and no details appeared, was, in our opinion (which it seems was erroneous), immaterial; but even if it was material, the annuitants might and should, then and there, have demanded such an account, but they did nothing. Now that the account has been restated, the question of waiver appears clearly for determination.

In view of their waiver, it would be inequitable at this time to allow those claims of the annuitants, which they could have made a dozen times before the second account was filed, and should have made, for all the facts of the case were known to them, and they were not misled by the trustee or by any one else. This case falls well within the principle of Jenkins v. Scranton, 205 Pa. 598. That was, indeed, a suit arising from a contract, but I can see no distinction in principle between it and the present case. The plaintiff

brought suit to recover his salary, which was payable monthly, and a month's salary due at the time of suit brought was not included in his statement of claim or in the judgment recovered.   It was held that he could not recover that month's salary in a subsequent action, and the court said: "When he sued in August, 1901, the salary for July was due, and if he did not include it in the statement of his claim against the City of Scranton at that time, he ought to have done so.   The judgment which we affirmed on the former appeal ought to have included all that the appellee in that case could have sued for, and he cannot now ask to recover his salary for July, 1901.   'A judgment settles everything involved in the right to recover, not only matters that were raised, but those which might have been raised.' "   So, in the present case, the claimants were awarded what they demanded, viz., 10,000 gold francs each for their annuities due on Feb. 14, 1924, and exceptions filed by the residuary legatees were dismissed and the decree was affirmed by the Superior Court.   This is res judicata.

The claims of Robert E. Lee de Potestad and Rupert Featherstonhaugh are, therefore, dismissed.

*Joseph Carson, Shirley Carter* and *Hampton L. Carson*, for exceptions.

*John Hampton Barnes*, contra.

PER CURIAM, July 8, 1927.—The interpretation of the will of Mathilda Lee Willing is settled, so far as this court is concerned, by the decision of the Superior Court in Willing's Estate, 84 Pa. Superior Ct. 546; and the facts have become familiar to us through the numerous hearings that have been held.   We have given careful consideration to the case with the aid of the arguments of the learned counsel of the parties, and agree with the conclusions of the Auditing Judge.

The exceptions of both parties exceptant are all dismissed and the adjudication is confirmed absolutely.