**[J-64-2018] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| MERSCORP, INC. N/K/A MERSCORP HOLDINGS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA, N.A.; CITIMORTGAGE, INC.; CITIBANK, N.A.; CREDIT SUISSE FINANCIAL CORPORATION; EVERHOME MORTGAGE COMPANY; JP MORGAN CHASE BANK, N.A.; STATE FARM BANK F.S.B.; WELLS FARGO BANK, N.A.; SOVEREIGN BANK; HSBC BANK USA, N.A.; HSBC FINANCE CORPORATION; GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P. N/K/A FINANCE OF AMERICA MORTGAGE LLC; CUSTOMERS BANCORP, INC.; CUSTOMERS BANK; THE BANK OF NEW YORK MELLON; THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK TRUST COMPANY AMERICAS; SANTANDER BANK, N.A. F/K/A SOVEREIGN BANK, N.A.; AND TRIDENT MORTGAGE COMPANY, L.P., | : | No. 67 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the Commonwealth Court at No. 523 CD 2016 dated May 4, 2017, Reversing the Order of the Court of Common Pleas of Delaware County, Civil Division, at No. 13-010139, dated March 22, 2016 |
| | : | |
| | : | ARGUED:  September 26, 2018 |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| DELAWARE COUNTY, PENNSYLVANIA, RECORDER OF DEEDS, BY AND THROUGH THOMAS J. JUDGE, SR., IN HIS OFFICIAL CAPACITY AS THE RECORDER OF DEEDS OF DELAWARE COUNTY, PENNSYLVANIA; FREDERICK C. SHEELER, IN HIS OFFICIAL CAPACITY AS RECORDER OF DEEDS IN AND FOR THE COUNTY OF BERKS, | : | |

PENNSYLVANIA; THE OFFICE OF THE : 
RECORDER OF DEEDS IN AND FOR :
THE COUNTY OF BERKS, :
PENNSYLVANIA; THE COUNTY OF :
BERKS, PENNSYLVANIA; JOSEPH J. :
SZAFRAN, IN HIS OFFICIAL CAPACITY :
AS RECORDER OF DEEDS IN AND FOR :
THE COUNTY OF BUCKS, :
PENNSYLVANIA; THE OFFICE OF THE :
RECORDER OF DEEDS IN AND FOR :
THE COUNTY OF BUCKS, :
PENNSYLVANIA; THE COUNTY OF :
BUCKS, PENNSYLVANIA; RICHARD T. :
LOUGHERY, IN HIS OFFICIAL :
CAPACITY AS THE RECORDER OF :
DEEDS IN AND FOR THE COUNTY OF :
CHESTER, PENNSYLVANIA; THE :
OFFICE OF THE RECORDER OF :
DEEDS IN AND FOR THE COUNTY OF :
CHESTER, PENNSYLVANIA; AND THE :
COUNTY OF CHESTER, :
PENNSYLVANIA, :
                                                   :
                         Appellants      :

## DISSENTING OPINION

**JUSTICE DONOHUE**                    **DECIDED:  April 26, 2019**

In my view, the unambiguous language of 21 P.S. § 351[1] requires the conclusion

that the recording of all deeds and other conveyances of real property[2] is mandatory in

---

[1]  Act of May 12, 1925, P.L. 613, No. 327, as amended.  As explained infra, the section number provided under Title 21 of the Purdon's Statutes are not the official section numbers of the law.  *See infra*, note 10.  Nonetheless, because many of the official Pamphlet Laws referred to in this Dissenting Opinion have similar section numbers, for the ease of the reader, I will refer to the various provisions discussed herein under their Title 21 section number.

[2]  As this Court has held, mortgage assignments are conveyances of real property in Pennsylvania.  *Pines v. Farrell*, 848 A.2d 94, 100-01 (Pa. 2004).

Pennsylvania. The Majority believes that the use of "shall" in section 351 is ambiguous and reaches the opposite conclusion. While I do not agree that the statute is ambiguous, if the Majority is correct that it is, I am of the view that when section 351 is read in pari materia with the numerous related statutes addressing the same subject, and the history of section 351 is considered, the legislative intent to make recording mandatory is abundantly clear. Also in contrast with the Majority, I conclude that the Recorders have an implied right of action to enforce this requirement. Thus, I respectfully dissent.

As the Majority recognizes, the first issue presented for our review is a matter of statutory interpretation. The statute in question states:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, **shall be recorded** in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

*Id.* (emphasis added).

The Majority holds that the statute implicitly states that recording is optional – that if one should **choose** to record a deed, conveyance, or other pertinent writing concerning real property, then the statute indicates the location in which the documents must be recorded.[3]  *See* Majority Op. at 19-21.  It bases this conclusion on the second sentence of the statute, finding that the only purpose of section 351 is to protect subsequent purchasers, and that recording is otherwise optional.  According to the Majority, the second sentence evinces "a clear consequence" of the failure to record:  "the mortgagee runs the risk of losing its status and being deprived of property rights – and a party that chooses not to record a conveyance or ownership interest pursuant to section 351 does so at its own peril."  *Id.* at 22.

In my view, the Majority's interpretation is erroneous and is in violation of our cannons of statutory construction in several respects.  First, the Majority's construction of section 351 requires the Court to insert language into the statute that is not there.  Indeed, the Majority acknowledges that its interpretation requires the addition of "an implicit 'if,'" as found by the Seventh Circuit Court of Appeals in *Union Cnty., Ill. v. MERSCORP, Inc.*,

---

[3]  I fully agree with the Majority's statement that section 351 applies only to those conveyances wherein the parties intend "to grant, bargain, sell, and convey any lands, tenements, or hereditaments situated in this Commonwealth," as that is precisely what the first sentence of section 351 states.  *See* Majority Op. at 19; 21 P.S. § 351.  Clearly a party must intend to effectuate the conveyance in order for the recording requirement of section 351 to apply – without an intent to convey title to the grantee, the deed is not "legally operative."  *Estate of Plance*, 175 A.3d 249, 260 (Pa. 2017).  For this reason, our recent decision in *Estate of Plance* has no applicability here, as that case involved the question of whether the grantor intended to convey land to a trust through deeds that he failed to record.  *See id.* at 266 (finding that the grantor "lacked the necessary intent to convey" land to a trust as provided in an unrecorded deed "so as to constitute effective delivery").  In light of our conclusion that the grantor did not intend to convey the land, we concluded in *Estate of Plance* that any question concerning the recording statutes was moot.  *Id.* at 267.

735 F.3d 730 (7th Cir. 2013), which involved a similarly worded statute. The federal court read this absent language into the Illinois statute in order to conclude that the statute did not require the recording of mortgage assignments. In so holding, the federal court likened the statute providing that deeds and mortgages "shall be recorded in the county in which such real estate is situated" to a notice in a department store providing, "All defective products must be returned to the fifth floor counter for a refund." *Id.* at 733 (quoting, in part, 765 ILCS 5/28). The Seventh Circuit stated that the notice does not require a person to return defective products, but instead provides the location for the return if the consumer chooses to do so. *Id.* The court acknowledged that while no "if" appears in the Illinois statute, and thus its interpretation is not aligned with the "plain meaning" of the statute, it concluded that "in context it's the better meaning." *Id.*

This reasoning represents a pursuit of the "spirit" of the statute instead of appropriately relying on its plain meaning. 1 Pa.C.S. § 1921(b). It further ignores the clear mandate (at least in this jurisdiction) that courts are prohibited from adding language into the statute that the General Assembly omitted. *Hanaway v. Parkesburg Grp., LP*, 168 A.3d 146, 154 (Pa. 2017) ("[I]t is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include."). There is no "if" or other discretionary or provisional language in section 351.

Moreover, the analogy announced by the Seventh Circuit, and discussed by the Majority with approval, *see* Majority Op. at 20-21, is inapt to the circumstances presented here because one must presume that the alternative meaning is nonsensical, i.e., it cannot be intended that all defective products must be returned. In a vacuum, it may be that intention is unlikely, but it ignores the possibility that other terms of sale indeed

require the return of a defective product – for example, a leaking gas tank. Even assuming that the Seventh Circuit and the Majority are correct that this alternative reading of the department store notice is nonsensical, that conclusion is clearly not required for the first sentence of section 351. As discussed at length below, it makes perfect sense to require that land conveyances must be recorded. Instead, a more closely analogous circumstance would be a car rental agreement, stating: "The vehicle shall be returned to the location where the rental occurred." This does not mean that returning the vehicle to the rental agency is optional. Returning the vehicle is unquestionably mandatory, and the contract further provides the location to which the return must be made. Likewise, the recording of deeds and conveyances is mandatory, and must occur in the county recorder's office. 21 P.S. § 351.

The Majority reaches its conclusion under the guise of interpreting section 351 as a whole – not reading any provision thereof in isolation. *See* Majority Op. at 15, 21; *see, e.g., Commonwealth v. Smith*, 186 A.3d 397, 402 (Pa. 2018) ("we do not read words in isolation, but with reference to the context in which they appear"). The Majority's invocation of this principal of statutory construction is in error, as the second sentence of section 351 does not in any way limit, modify or qualify the language of the first sentence of the statute. Assessing section 351 as clear and unambiguous – and without the "implicit 'if'" that the Majority has inserted – the directive that deeds and conveyances "shall be recorded" in the office of the county recorder plainly states that these interests must be recorded. "By definition, 'shall' is mandatory[, and] there is no room to overlook the statute's plain language to reach a different result." *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997). *See also Koken v. Reliance Ins. Co.*, 893 A.2d 70,

81 (Pa. 2006) ("the term 'shall' is mandatory for purposes of statutory construction when a statute is unambiguous"). Simply because the General Assembly included in section 351 a provision indicating that an unrecorded interest in property is deficient as against a subsequent purchaser for value who duly records his or her interest does not alter the original mandate that conveyances of real property must ("shall") be recorded. Rather, the second sentence announces a consequence of failing to record and communicates the well-settled law that Pennsylvania is a race-notice jurisdiction. *See, e.g., Pennsylvania Salt Mfg. Co. v. Neel*, 54 Pa. 9, 18 (1867); 21 P.S. § 622 (priority of mortgages according to date of recording).[4] Instead of reading the first sentence of the statute in context and as a greater part of the whole provision, the Majority uses the second sentence to modify the first, which is an interpretation that is unsupported by the plain language of the statute.[5]

The Majority contends that section 351 does not require the recording of conveyances because this Court has, in certain isolated instances, interpreted "shall" to mean "may." Majority Op. at 15-16. It further posits that the second sentence only indicates the location for recordation (if the party chooses to record). Assuming,

---

[4] Act of April 27, 1927, P.L. 440, No. 284, § 1.

[5] Contrary to the Majority's contention, this interpretation does not fail to give effect to every word of the statute. *See* Majority Op. at 17-18 & n.9. As stated hereinabove, the second sentence of the statute is instructive and provides a consequence of a party's failure to record. Pursuant to the plain language of section 351, the second sentence does not impose a limitation on the first sentence, which requires conveyances of real property to be recorded. This gives effect to both provisions of section 351 and all of the words contained therein. As discussed infra, this becomes increasingly clear based on the legislative history of Pennsylvania's recording statutes, the interpretation of similar statutes on the same subject, and the consequences of the Majority's interpretation.

arguendo, that the Majority's interpretation of the language of section 351 is plausible, then the statute is ambiguous, as it also could be interpreted, as Appellants do, to mean that the stated interests in real property must be recorded. *See Commonwealth v. Giulian*, 141 A.3d 1262 (Pa. 2016) ("When the parties read a statute in two different ways and the statutory language is reasonably capable of either construction, the language is ambiguous."). This requires that we go beyond the plain language of the statute to discern the General Assembly's intent. 1 Pa.C.S. § 1921(c).[6]

Beginning with its earliest laws, Pennsylvania required conveyances of land to be recorded. In 1682, William Penn and other influential Pennsylvanians compiled a series of laws from England with which they agreed. One such law was referred to in England as the Statute of Enrollments, which required "a deed of bargain and sale of a freehold interest" to be "enrolled" either in a court of record at Westminster or in other named public offices. *History of the United States' system of conveyancing*, 1 Patton and Palomar on Land Titles § 3 (3d ed.). The failure to do so within six months of the conveyance rendered the deed void. *Id.* However, the Statute of Enrollments revealed itself to be largely ineffectual, as it "was evaded by the adoption of the conveyance by lease and release." *Appeal of Luch*, 44 Pa. 519, 523 (1862) (citing William Blackstone, *Commentaries on the Laws of England*, Vol. II, 342 (1753)).

---

[6] To discern legislative intent when faced with an ambiguous statute, the factors to consider include, but are not limited to: "(1) The occasion and necessity for the statute; (2) The circumstances under which it was enacted; (3) The mischief to be remedied; (4) The object to be attained; (5) The former law, if any, including other statutes upon the same or similar subjects; (6) The consequences of a particular interpretation; (7) The contemporaneous legislative history; [and] (8) Legislative and administrative interpretations of such statute." 1 Pa.C.S. § 1921(c).

The Pennsylvania version of this law attempted to remedy the shortcomings of the English law, thus requiring that "Conveyances of Land … shall be Enrolled or Registered in the publick Enrollment-Office of the said Province, within the space of two Moneths next after the making thereof, else to be void in Law." XX Pa. Stat. 321-22 (1682); *see also Appeal of Luch*, 44 Pa. at 524. The preamble of the law stated that its intention was "to prevent Frauds and vexatious Suits." XX Pa. Stat. 321-22 (1682).

In 1715, the General Assembly established "The Office for recording of Deeds," and stated that land conveyances "may be recorded in the said office." Act of May 28, 1715, 1 Sm.L. 94, Ch. 208. Although the General Assembly used the word "may," it stated its intent therein that the law was to "be of the same force and effect here, for the giving possession and seisin,[7] and making good the title and assurance of the said lands … as … deeds enrolled in any of the king's courts of record at Westminster, are or shall be in the kingdom of Great Britain." *Id.*, 1 Sm.L. 95, Ch. 208 (footnote added). The law further provided that unless recorded within six months after the conveyance, the deed, mortgage or defeasible deed in the nature of mortgages was void. *Id.*, 1 Sm.L. 94, § 8 ("no deed or mortgage, or defeasible deed, in the nature of mortgages, hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant

---

[7] The term "seisin" refers to "livery of seisin," which was a ceremony whereby a grantor of land symbolically delivered possession of land to the grantee. *History of the United States' system of conveyancing*, 1 Patton and Palomar on Land Titles § 3 (3d ed.). This included the grantor giving a twig, handful of dirt, a piece of turf, or another symbol as a token of delivery, while using "proper and technical words to show his intent to transfer the land" for whatever length of time the land was to be conveyed (e.g., fee simple, fee tail, or life estate). *Id.*

any estate therein for life or years, unless such deed be acknowledged or proved, **and recorded**, within six months after the date thereof") (emphasis added).[8]

The General Assembly amended that act in 1775 to make clear that deeds and conveyances must be recorded:

> [A]ll deeds and conveyances, which, from and after the publication hereof, shall be made and executed within this province, of or concerning any lands, tenements or hereditaments, in this province, or whereby the same may be any way affected in law or equity, … **shall be recorded in the recorder's office where such lands or hereditaments are lying and being**, within six months after the execution of such deeds or conveyances; and that every such deed and conveyance, that shall at any time after the publication hereof be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent, and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid, before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim.

Act of March 18, 1775, 1 Sm.L. 422 (emphasis added). The General Assembly included a preamble to the Act of March 18, 1775, wherein it explained that its reason for amending the recording statute was to "remedy" the "different and secret ways of conveying lands … such as are ill disposed," and which "have it in their power to commit frauds, by means whereof divers persons may be injured in their purchases and mortgages by prior and secret conveyances, and fraudulent incumbrances." *Id.* In other words, the General Assembly stated its intent to stop conveyances from occurring differently and in secrecy and also to protect subsequent purchasers and mortgagees from fraudulent conduct by requiring a single, transparent and public record of ownership and interests in land

---

[8] As discussed infra, this statute appears in 21 P.S. § 621, and remains good law.

through the enactment of this statute. This statute served to achieve both aims by making clear that the public recording system was mandatory and by providing that unrecorded conveyances are inferior to recorded conveyances held by subsequent purchasers of the same land. *See Souder v. Morrow*, 33 Pa. 83, 84 (1859) (stating that the Act of 1775 requires the recording of titles to land "for the public good" and should be adhered to "because there is safety in so doing").

The following year, the Office of the Recorder of Deeds was included as a mandatory county office in Pennsylvania's original Constitution, *see* Pa. Const. § 34 (1776), and it remains so today. Pa. Const. art IX, § 4. In 1841, the General Assembly made recording in the Office of the Recorder of Deeds mandatory for all deeds and conveyances that preceded the passage of the Act of March 18, 1775. Act of March 26, 1841, P.L. 106, § 1, 21 P.S. § 441 ("**it shall be the duty** of all persons who claim any lands or tenements in this Commonwealth under or by virtue of any deeds or conveyances bearing date previously to the act of 18th March, 1775, to which this is a supplement, **to have the same recorded**, in the proper county, in the manner **now provided by law**, within two years from the date thereof") (emphasis added).

The mandatory recording provision of the Act of 1775 was modified only slightly in 1883 (and never again since) to provide that recording must occur within ninety days after the execution of the deed or conveyance, lessening the timeframe from the previously allowed six months. *See* Act of May 19, 1893, P.L. 108, No. 61, § 1. The preamble that was included in the Act of 1775 remained included in the amended version of the statute. The substantive language of the statute (without the preamble) appears in Title 21 of Purdon's Statutes under section 444. *See* 21 P.S. § 444; *see also infra*, note 10.

The Generally Assembly added section 351 to Pennsylvania's roster of recording laws in 1925. Section 351 is in pari materia – it "relate[s] to the same persons or things or to the same class of persons or things" – to several other recording statutes appearing in Title 21, including sections 356,[9] 441, 444, and 621, as each of these statutes address the recording of deeds, conveyances and/or mortgages. *See* 1 Pa.C.S. § 1932. Our rules of statutory interpretation direct that we must, to the extent possible, construe these statutes as one. *Id.*

Beginning with section 444, it contains substantially similar language to section 351, as both provide that deeds and conveyances "shall be recorded" in the recorder's office, and both also include a provision stating that any deed or conveyance not so recorded is void as to a subsequent bona fide purchaser or mortgagee for value who has so recorded. *Compare* 21 P.S. § 351 *with id.*, § 444. As stated hereinabove, when enacting section 444, the General Assembly specifically stated its intent, in the preamble to that provision, that the law was to provide for the creation of a transparent and complete system of recording in Pennsylvania. *See* Act of March 18, 1775, 1 Sm.L. 422, *as amended*, Act of May 19, 1893, P.L. 108, No. 61, § 1; 1 Pa.C.S. § 1924 (providing that although not controlling, "[t]he title and preamble of a statute may be considered in the construction thereof").[10] Further, although the General Assembly included the protection

---

[9] Act of April 24, 1931, P.L. 48, No. 40, § 1.

[10] I note that while the titles of statutes may be considered in construing their meaning, the title of 21 P.S. § 351, "Failure to record," is not in fact the title of that statute. The actual title of section 351, as it appears in the Pamphlet Law, is "Recording of Deeds, Regulation." Act of May 12, 1925, P.L. 613, No. 327. As our Commonwealth Court has correctly explained, the "P.S." in these citations stands for "Purdon's Statutes," which is a publication by West Publishing Company that organizes our Pamphlet Laws. *In re Appeal of Tenet HealthSystems Buck Cnty.*, 880 A.2d 721, 722-23, 725 (Pa. Commw.

for subsequent bona fide purchasers in section 444, this Court has long recognized that section 444 makes mandatory the recording of deeds and conveyances. In *Davey v. Ruffell*, 29 A. 894 (Pa. 1894), for example, this Court stated, in pertinent part, that "[t]he act of 1775 … required 'all deeds and conveyances' to be recorded," and that the supplement to that act, the act of 1893 continued this requirement. *Id.* at 895 ("The very words of the act of 1775, requiring all deeds and conveyances to be recorded, are repeated without change in the act of 1893, so that the rule upon this subject continues unchanged.").

As also recited above, section 441 states that for any deed or conveyance that predated the recording act of 1775 (current section 444), it was "the duty" of the person who claimed the interest in land "to have the same recorded … in the manner now provided by law, within two years from the date thereof." 21 P.S. § 441. Similarly, section 621 provides simply that unrecorded deeds, mortgages, or defeasible deeds in the nature of a mortgage must be recorded within six months of the conveyance. *Id.*, § 621.

Section 356 likewise touches upon the same concern, addressing agreements in writing concerning real property. *See* 21 P.S. § 356. It includes, in part, identical language to section 351, providing:

> All agreements in writing relating to real property situate in this
> Commonwealth by the terms whereof the parties executing

2005) ("*Tenet*") ("Because Pennsylvania's Pamphlet Laws are organized by chronology, not subject, Purdon's has long served legal practitioners, making the laws more easily referenced."). While undoubtedly helpful, they are not the "official" or "positive law" as are the Pamphlet Laws or the Pennsylvania Consolidated Statutes (which citation includes "Pa.C.S."). *Id.*; 1 Pa.C.S. § 503 (referring to the Pennsylvania Consolidated Statutes as "legal evidence of the laws contained therein"). When publishing the Pamphlet Laws, Purdon's at times adds to or omits from the official text in its unofficial publication. *See Tenet*, 880 A.2d at 726 (noting error in Purdon's publication of section 8(c) of P.L. 1379 of 1931).

the same do grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property, or do release the grantee or vendee thereunder against damages which may be inflicted upon such real property at some future time, shall be acknowledged according to law by the parties thereto or proved in the manner provided by law, and **shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate**.

21 P.S. § 356 (emphasis added). Like section 444, section 356 also includes a preamble, wherein the General Assembly explains that it is "an act **requiring the recording** of certain written agreements pertaining to real property, and prescribing the effect thereof as to subsequent purchasers, mortgagees, and judgment creditors to the parties thereto." Act of April 24, 1931, P.L. 48, No. 40 (emphasis added); *see* 1 Pa.C.S. § 1924.

Reading all these statutes together as one, as our General Assembly instructs that we must, it is clear that section 351 requires the recording of deeds and conveyances. 1 Pa.C.S. § 1932. Moreover, it would be absurd and unreasonable – in fact, impossible – for this Court to construe identical language in neighboring statutes that address the same subject and class of things to have different interpretations. 1 Pa.C.S. § 1922(1), (2) (stating that courts interpreting a statute must presume the General Assembly did not intend a statute to yield a result that is absurd, unreasonable or impossible to execute and that it "intends the entire statute to be effective and certain"). Sections 356, 441, 444 and 621 all make clear that the recording of deeds, mortgages and conveyances is mandatory; this same interpretation must therefore be applied to section 351.

That the General Assembly intended its directive that deeds and conveyances "shall be recorded" in the recorder's office to be mandatory becomes even clearer when we observe the numerous other provisions that address the recording of other documents

wherein the General Assembly used the term "may" to connote that recording was a discretionary or optional act.[11]  As this Court recently held, where the General Assembly uses the word "may" in a statutory provision, its use of "the term 'shall' in a similar statute

---

[11] *See, e.g.*:

- Act of April 5, 1849, P.L. 344, § 2, 21 P.S. § 383 ("All deeds of county commissioners, being duly acknowledged, **may be recorded** in the office for recording deeds in the county where the lands lie") (emphasis added);

- Act of Dec. 14, 1854, P.L. (1855), 724, § 1, 21 P.S. § 384 (letters of attorney authorizing various specified acts related to the conveyance of real estate "**may be placed of record in the recorder of deeds office**") (emphasis added);

- Act of March 14, 1846, P.L. 124, § 1, 21 P.S. § 385 ("patents granted by the Commonwealth, and all deeds of sheriffs, coroners, marshals and treasurers; and all deeds made in pursuance of a decree of any court, being duly acknowledged, **may be recorded** in the office for recording deeds in the county where the lands lie) (emphasis added);

- Act of April 15, 1828, P.L. 490, § 1, 21 P.S. § 386 (release of legacies and to executors "**may be recorded** in the office for recording deeds") (emphasis added);

- Act of April 4, 1919, P.L. 49, § 1, 21 P.S. § 390 ("deeds and patents granted by the Commonwealth of Pennsylvania **may be recorded** in the office for recording deeds") (emphasis added);

- Act of May 25, 1897, P.L. 83, No. 63, § 1, 21 P.S. § 391 ("releases, contracts, letters of attorney and other instruments of writing … **may be recorded** in the office for recording deeds" by a married woman alone) (emphasis added);

- Act of June 2, 1959, P.L. 454, § 1, 21 P.S. § 404 ("lease or sublease … **may but need not**, unless otherwise required by law, **be recorded** in the office for recording of deeds") (emphasis added);

- Act of Nov. 5, 1981, P.L. 328, No. 118, § 1, 21 P.S. § 451 (affidavits that may affect title to real property in Pennsylvania "**may be recorded** … in the Office of the Recorder of Deeds or Commissioner of Records") (emphasis added).

… suggests a deliberate intention" by that body for the latter act to be mandatory. *A. Scott Enterprises, Inc. v. City of Allentown*, 142 A.3d 779, 788-89 (Pa. 2016).[12]

Appellees point to former 21 P.S. § 623 (now repealed), which previously stated that "**assignments of mortgages** and letters of attorney authorizing the satisfaction of mortgages duly executed and acknowledged, in the manner provided by law for the acknowledgment of deeds, **may be recorded** in the office for recording deeds[.]" Act of April 9, 1849, P.L. 524, No. 354, § 14 (emphasis added), *repealed by* Act of Jan. 29, 1998, P.L. 45, No. 12, § 1. Appellees take this as proof that the recording of mortgage assignments, which is the act specifically at issue in this case, is not required, as section 623 preceded section 351 by seventy-six years and then "coexisted" with it for seventy-

---

[12] The Majority is correct that this is a partial quotation from of *A. Scott Enterprises.* This is because the remaining portion of the quote, which the Majority includes in its decision, is misleading without providing greater context. *See* Majority Op. at 23 n.13. The statute at issue in *A. Scott Enterprises*, section 3935 of the Procurement Code, is a prompt payment statute for government projects and provides that a court "**may** award" certain amounts in addition to damages. 62 Pa.C.S. § 3935 (emphasis added). The appellant sought to have the word "may" interpreted as mandatory, not discretionary. *A. Scott Enterprises, Inc.*, 142 A.3d at 787. This Court disagreed, concluding that the use of the word "may" indicated that the additional award was discretionary with the court. In so holding, we relied in part on "the fact that the General Assembly used the term 'shall' in a similar statute," the Contractor and Subcontractor Payment Act (CASPA). *Id.* at 788. "The General Assembly's use of the word 'shall' in provisions in CASPA which are otherwise functionally equivalent to the terms of the Procurement Code suggests a deliberate intention that awards of penalties and attorney fees under the Procurement Code are within the discretion of the tribunal." *Id.* Further, like the statutory scheme in the case at bar, we further observed in *A. Scott Enterprises* that "a different payment provision within the Procurement Code itself employs mandatory language [('shall')] respecting a penalty for late payments," and the Court found that this "corroborat[ed that] the General Assembly meant Section 3935 to be permissive." *Id.* at 788-89 (citing 62 Pa.C.S. § 3932(c)). Thus, the Majority is incorrect that *A. Scott Enterprises* supports (rather than undermines) its decision to ignore the General Assembly's use of "shall" and "may" in surrounding statutes on the same subject, and to instead conclude that the General Assembly's use of the word "shall" in section 351 does not mandate recording. *See* Majority Op. at 22-23 n.13.

three years. Appellees' Brief at 28. Thus, according to Appellees, section 351 cannot be interpreted to require the recording of mortgage assignments today. *Id.*

I disagree, and find support for Appellants' argument that the enactment of section 623 was in response to this Court's holding in 1883 that a mortgage assignment was not included under the provisions of the Acts of 1717 and 1775. Specifically, in *Craft v. Webster*, 4 Rawle 242 (Pa. 1833), this Court held that the recording statutes addressed only mortgages, deeds and conveyances, all of which the Court found were required to be recorded in Pennsylvania, but that the statutes did not speak to (and thus, did not include) assignments of mortgages. *Id.* at 246. Soon thereafter, the General Assembly enacted section 623, providing that it was permissible to record assignments of mortgages. 21 P.S. § 623 (repealed). In *Appeal of Pepper*, 77 Pa. 373 (Pa. 1875), we recounted this history, explaining:

> Prior to the enactment of the 14th sect. of the Act of 9th April 1849, *supra,* the decisions were conflicting as to whether the assignment of a mortgage was within the recording acts. In *Craft v. Webster*, 4 Rawle 242, and in *Mott v. Clark*, 9 Barr 399, it was held not to be; but in *Philips v. Bank of Lewistown*, 6 Harris 394, it was held to be within the recording Act of 28th May 1715. The right to record this assignment was set at rest by the Act of 1849.

*Id.* at 377.[13]

---

[13] Appellees rely on *Appeal of Pepper* for the proposition that the recording has always been interpreted in Pennsylvania as being optional, not mandatory. Appellees' Brief at 15. Although in *Appeal of Pepper* this Court stated that from the language of the statutes it reviewed, "it appear[ed that] the recording of written instruments has not generally been mandatory," the statutes the Court relied upon for that proposition all used permissive language – "may be recorded" and "entitled to be recorded." *See Appeal of Pepper*, 77 Pa. at 375-77. The Court did not consider any statutes that used the phrase "shall be recorded," such as is the case in section 351 (as well as sections 356, 441, 444 and 621). Thus, this statement in *Appeal of Pepper* is of no value in assessing the question presently pending before the Court.

Further, in repealing section 623, the General Assembly made a determination that the law was "supplemented or superseded by other acts or otherwise obsolete." H.B. 1763, Printer's No. 2226, Reg. Sess. (Pa. 1997). The law is clear that mortgage assignments are conveyances, and as discussed hereinabove, there are several statutes that specifically and expressly mandate the recording of conveyances. *See Pines v. Farrell*, 848 A.2d 94, 100-01 (Pa. 2004) ("Given our conclusion that a mortgage conditionally conveys the subject property, it logically follows that an assignment of the mortgagee's rights likewise effects a conditional transfer of the subject property to the assignee."); *Philips v. Bank of Lewistown*, 18 Pa. 394, 402 (1852) ("A mortgage is in form a conveyance of the land, and an assignment of it is another formal conveyance of the same land.") (emphasis omitted).

Moreover, if, as the Majority concludes, recording mortgage assignments is optional, then recording deeds is optional, as both are covered under section 351. In addition to being in direct opposition to the stated intent of our General Assembly over the 350-year history of our recording statutes, the consequences of this interpretation are far reaching and potentially catastrophic. Recording of deeds is critical to preserve the chain of title for a property, gaps in which can negatively impact, for example, the marketability of the title for that property and adjacent properties; the ability of a subsequent owner to obtain a mortgage and title insurance; the determination of the precise boundary lines of the property; and tax sales of the property. *See* David E. Woolley & Lisa D. Herzog, *MERS: The Unreported Effects of Lost Chain of Title on Real Property Owners*, 8 Hastings Bus. L.J. 365, 389 & 396 (Summer 2012); *Luffborough v. Parker*, 16 Serg. & Rawle 351 (Pa. 1827) (citing *Birch v. Fisher*, 13 Serg. & Rawle 208

(Pa. 1825), for the proposition that "[a] complete chain of title must be made out by the purchaser under a sale for taxes"). Recorded deeds are also used, inter alia, to discern the owner of a property for purposes of identifying a defendant when an accident occurs on real property, *see, e.g., Minner v. City of Pittsburgh*, 69 A.2d 384, 386 (Pa. 1949), and to develop the tax rolls, *see, e.g.,* 72 P.S. § 5860.102[14] (defining, in pertinent part, "owner" and "delinquent property owner," for tax purposes, as the person named "as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording"). Looking years into the future, if a property changed hands numerous times but the deed was recorded only some of the times, the records kept in the Office of the Recorder of Deeds would be of no value, as they would be wholly unreliable – again, in direct opposition to the intention of Pennsylvania's founding fathers and the General Assembly in creating these statutes.

Furthermore, a property owner should be able to rely on public records to determine, at any given time, who simultaneously owns an interest in his or her property. Mortgagors should not be forced to embark on a veritable wild goose chase to discern who holds their mortgage and note, is entitled to payments, and/or is entitled to foreclose. Both the Majority and the Commonwealth Court cite to the three-judge panel opinion of the Superior Court in *US Bank N.A. v. Mallory*, 982 A.2d 986 (Pa. Super. 2009), for the proposition that mortgage assignments need not be recorded. *See* Majority Op. at 18-19; *MERSCORP, Inc. v. Delaware Cnty.*, 160 A.3d 961, 966 (Pa. Commw. 2017). In *Mallory*, the Superior Court held that a mortgage assignment does not need to be

---

[14] Act of June 19, 2018, P.L. 239, No. 38, as amended.

recorded and that a plaintiff's unsubstantiated claim that it is the "legal owner" of a mortgage is sufficient for a foreclosure action to proceed. *Mallory*, 982 A.2d at 993-94.

The Majority's citation to *Mallory* constitutes the first time this Court has ever done so. This Court was not asked to review *Mallory* and no decision of this Court has ever discussed, let alone blessed, the holding in *Mallory*. In my view, and for the reasons discussed here (among others), *Mallory* was decided incorrectly and the decision presents a perfect example of why mortgage assignments must be recorded. The facts of *Mallory* are particularly egregious, as the plaintiff in foreclosure had not even been assigned the mortgage when suit was filed. At the time US Bank filed the complaint in foreclosure, it was only "in the process of formalizing the assignment" from MERS. *Id.* at 989. Thus, at the time of foreclosure, the homeowner had received no notice that the bank seeking to foreclose had any legal interest whatsoever in her loan or in the title to her property, could not rely on the public recording system to make such a determination, and the bank was allowed to proceed in foreclosure based on nothing more than a bald statement that it was going to be the owner of the mortgage at some unknown point in the future.

The Majority finds further support for its decision in cases from this Court in which we held that an unrecorded deed is nonetheless valid, believing that this "enduring acknowledgment" refutes any claim that recording is mandatory. *See* Majority Op. at 18 (citing *Matter of Pentrack's Estate*, 405 A.2d 879, 880 (Pa. 1979); *Fiore v. Fiore*, 174 A.2d 858, 859 (Pa. 1961)). The cases relied upon by the Majority, however, never mention, let alone discuss, Pennsylvania's recording statutes. Although an unrecorded deed or mortgage may be valid as a matter of contract law, the law is clear that unless these

interests are recorded within six months, the deed cannot be sold, inherited or gifted to another. 21 P.S. § 621. In other words, an unrecorded deed is unmarketable. *See Mower v. Mower*, 80 A.2d 856, 858 (Pa. 1951) (recognizing that the failure to record a deed "render[s] a valid title unmarketable"); Black's Law Dictionary 1713 (10th ed. 2014) (defining "marketable title" as, inter alia, "a title that enables a purchaser to hold property in peace during the period of ownership and to have it accepted by a later purchaser who employs the same standards of acceptability").

This concept is best illustrated in our early decision in *Levinz v. Will*, 1 U.S. 430 (Pa. 1789), wherein this Court was asked to decide whether an unrecorded mortgage was valid and enforceable against the mortgagor. This Court found that the failure to record did not render the mortgage invalid as to the mortgagor:

> The original intent, then, of the makers of the law immediately under consideration, and their principal reason, seems to have been to prevent honest purchasors, or mortgages, of real estates, from being deceived by prior secret conveyances, or incumberances; and, therefore, they have directed that such conveyances, or incumberances, shall be recorded in six months, or that they should not be sufficient to pass any estate. Thus, by having recourse to the offices of the Recorders, any one may ascertain the previous liens upon the property, which he wishes to purchase, or to receive as a pledge; and this amounts to a constructive notice to all men, and supercedes the necessity of express personal notice. But the Legislature did not mean, nor have they, in fact, enacted, that express personal notice, where given, should have no effect: Neither could they entertain an idea of defeating fair and honest bargains, which do not injure other persons: And, if this unrecorded deed can be obligatory in no other manner, it may certainly operate as a covenant to stand seized to uses.

*Id.* at 435. While a person may hold a valid interest in unrecorded property, this does not change the longstanding requirement that interests in land must be recorded.

The purpose of the recording system is "to furnish a permanent record of all titles and muniments of real estate," *McCaraher v. Commonwealth*, 5 Watts & Serg. 21 (Pa. 1842), and to prevent fraud by providing public notice as to who holds title to real estate. *Salter v. Reed*, 15 Pa. 260, 263 (1850). It is not, as the Majority states, to provide "a service [that] purchasers and mortgage holders have a right to accept or decline." Majority Op. at 21 (emphasis omitted). The Majority's conclusion is antithetical to the reason for having a public system of recording; it would render the recording system completely ineffectual and useless, as it would be incomplete and fail to "give public notice in whom the title resides" or work to prevent fraud "by deceptious appearance of title." *Salter*, 15 Pa. at 263; *McCaraher*, 5 Watts & Serg. 21. Furthermore, Pennsylvania has created an elaborate and expensive statutory scheme, which includes a system of indexing properties to ensure the correctness of land maps and ownership. *See* Act of Jan. 15, 1988, P.L. 1, No. 1, §§ 1-7, 21 P.S. §§ 331-337 (the Uniform Parcel Identifier Law); Act of July 5, 2012, P.L. 935, No. 100, §§ 1-9, 21 P.S. §§ 483.1-483.9 (the Uniform Real Property Electronic Recording Act). The statutory scheme included under Title 21 and the constitutional requirement of a recorder of deeds for every county would be nonsensical and a waste of resources if recording is a purely voluntary act.

The Majority erroneously imports into my interpretation of section 351 a conclusion that "a failure to record a conveyance means it never occurred." Majority Op. at 19 (stating that the General Assembly did not intend for an unrecorded conveyance to be treated "as if it never happened"). As my discussion above makes clear, this is an inaccurate restatement of my analysis. An unrecorded deed or mortgage does not simply disappear or cease to exist and is clearly enforceable under contract principles or against

third parties with actual notice of the conveyance. *See, e.g, Levinz*, 1 U.S. at 435; *Appeal of Nice*, 54 Pa. 200, 201 (1867) (the law requires a mortgage to be recorded within six months, but an unrecorded mortgage continues to be operative against the mortgagor). By setting up this false premise, the Majority attempts to paint an apocalyptic outcome. In actuality, however, the Majority fails to recognize the broader point entirely: by creating a recording system for conveyances of land, the General Assembly intended a public, transparent record of ownership of real property. By finding that the recording of conveyances is not mandatory, the Majority has not only entirely ignored the rest of the statutory scheme, but has upended this system and rendered the basis for it a nullity.

Proponents of MERS view the recording laws as archaic, involving a "process … derived from seventeenth century real property law [that] is not at all suited to late twentieth century mortgage finance transactions." Phyllis K. Slesinger & Daniel Mclaughlin, *Mortgage Electronic Registration System*, 31 Idaho L. Rev. 805, 808 (1995). Its opponents observe that MERS does not render obsolete "[t]he policy justifications behind recording statutes," which "are as germane today as they were hundreds of years ago, when the first American colonies began adopting the statutes. Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 125 (October 2011). Although amici for Appellees contend that MERS is itself a recording system "that increases transparency, efficiency, and accuracy," Appellees vehemently deny that MERS is a recording system at all, let alone one that promotes transparency. *Compare* Freddie Mac and Fannie Mae's Amicus Brief at 11-12, *with* Appellees' Brief at 26 n.8. In fact, Appellees concede that MERS does not satisfy what it views as the goal of recording – "to provide constructive

notice to the world of an interest (or transfer in interest) in real property." Appellees' Brief at 26 n.8.

Whether considered a registration system, a recording system, or something else altogether, MERS is the only entity with a database of information concerning the chain of title for the properties in which its members hold an interest. This means that if MERS were to fail, the chain of title for properties in which its members had interests would be forever lost (assuming it was complete in the first place). Homeowners would not know who was entitled to receive payments on the loans, and foreclosures would occur in a manner reminiscent of the Wild West – whichever financial institution can get its hands on the mortgage and promissory note first gets to keep them.

As history teaches, private ventures can fail financially or otherwise collapse, no matter how big or well established. *See* Robert Pickel*, Ten Years After: Identifying the Deadliest Sin of the Financial Crisis*, Banking & Fin. Services Pol'y Rep. 1, 9 (2017). The fact that MERS registers and keeps track of mortgage assignments in its system shows that it agrees that there must be some registration and/or recordation of mortgages and assignments. As between an unregulated private institution that operates out of public view and without transparency and a constitutionally-mandated government office that keeps this information as a matter of public record for all to see, the General Assembly's choice of the latter should be enthusiastically reaffirmed.[15]

---

[15] I again stress that the Majority's interpretation of section 351 affects not only the assignment of mortgages but, at the ultimate level, deeds conveying real property. As tenuous as the MERS registration system is, it is at least some attempt at order in chronicling these ownership interests. There is no such private register of deeds. If the General Assembly chooses to bless the MERS business model and to exempt assignment of mortgages from mandatory recording, it is free to do so as an expression

The second issue upon which we granted allowance of appeal was whether the Recorders of Deeds "possess standing or a right of action to pursue claims against" Appellees.[16] *Merscorp, Inc. v. Delaware Cty., Recorder of Deeds By & Through Judge*, 174 A.3d 549 (Pa. 2017) (per curiam). A right of action can be either express or implied. *See Commonwealth, Dept. of Environmental Resources v. Butler Cnty. Mushroom Farm*, 454 A.2d 1, 4 (Pa. 1982). As the Majority observes, "section 351 does not expressly authorize a right of action by county recorders," Majority Op. at 24 n.14, nor do the Recorders claim that an express authorization exists. Instead, the question is whether the Recorders have an implied right of action to challenge Appellees' failure to adhere to the mandates of section 351.

Relying on the test for a private right of action announced in *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623 (Pa. 1999),[17] the Majority finds that "since section 351 does not

---

of public policy. But it is not the role of this Court to disregard centuries of precedent and an entire statutory scheme in order to adjust the law to the preference of private actors.

[16] The concepts of standing and right of action have been described as "allied but distinct." *Commonwealth v. Beam*, 788 A.2d 357, 362 (Pa. 2002). As we have previously held, standing is a requirement that a party is sufficiently interested in a matter; "a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' and he has no right to obtain a judicial resolution of his challenge." *In re T.J.*, 739 A.2d 478, 481 (Pa. 1999). Right of action, on the other hand, is more general, and relates to the existence of a cause of action for which the plaintiff has a civil remedy. 1A C.J.S. Actions § 54. In their responsive brief (and at oral argument), Appellees state that they are not challenging the Recorders' standing in this matter. *See* Appellees' Brief at 48-49. I therefore focus exclusively on the question of the Recorders' right of action.

[17] In *Estate of Witthoeft*, this Court adopted a three-prong test for determining whether there is an implied private right of action announced by the United States Supreme Court: (1) "Is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a right in favor of the plaintiff?" (2) "Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?" (3) "Is it consistent with the underlying purposes of the legislative scheme to imply such a

expressly mandate recording," the Recorders cannot establish an implied right of action under this test. Majority Op. at 24 n.14. In addition to my disagreement with the Majority's interpretation of section 351, its reliance on *Estate of Witthoeft* is misplaced, as the case at bar does not involve a "private right of action." A "private right of action" pertains to "[a]n individual's right to sue in a **personal capacity** to enforce a legal claim." Black's Law Dictionary 1520 (10th ed. 2014) (emphasis added). This matter involves an action by government entities in their **official capacity**. In such cases, we have observed that an agency of the government "is invested with the implied authority necessary to the effectuation of its express mandates." *Beam*, 788 A.2d at 359-60 (citing *Butler County Mushroom Farm,* 454 A.2d at 4; *Pa. Human Relations Comm'n v. St. Joe Minerals,* 382 A.2d 731, 736 (Pa. 1978); *Day v. Public Service Comm'n (Yellow Cab Co.*), 167 A. 565, 566 (Pa. 1933); 2 Am.Jur.2d Administrative Law § 62 (1994)). *See also* Seth Davis, *Implied Public Rights of Action*, 114 Colum. L. Rev. 1, 9 (2014) (stating that an implied public right of action gives a government agency or subdivision the right to sue to enforce a statutory provision).

In *Beam*, the Department of Transportation sought an injunction against Beam's establishment of an unlicensed airport on his private property. *Beam*, 788 A.2d at 362. Beam argued that the Department of Transportation did not have authority to commence a civil action against him, but this Court disagreed. In considering the Department's authority, we borrowed language from case law addressing standing, stating:

> [W]hen the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it

remedy for the plaintiff?" *Estate of Witthoeft*, 733 A.2d at 626 (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, *i.e.,* that it has "standing."

*Id.* at 361 (quoting *Pa. Game Comm'n v. Dep't of Envtl. Res.,* 555 A.2d 812, 815 (Pa. 1989)). This Court considered the Aviation Code's statutory requirements authorizing the Department of Transportation to establish fees for aviation services including for private airport licenses. *Id.* We further recognized that the Department's authority must be construed liberally because it implicates public safety and welfare. *Id.* On these bases, the Court determined that the Aviation Code evidenced an intention to confer upon the Department of Transportation the ability to secure compliance with the statutory requirements. *Id.*

Returning to the case at bar, the position of recorder of deeds is mandated by the Pennsylvania Constitution. Pa. Const. art. IX, § 4 ("County officers shall consist of … recorders of deeds … ."). Recorders are elected officials who serve four-year terms. *Id.* The law requires them "to receive all deeds presented for record … and record the same." 21 P.S. § 325.1.[18] It is the duty of the recorder of deeds to maintain accurate, comprehensive and permanent land records throughout the Commonwealth. *McCaraher*, 5 Watts & Serg. 21. This duty includes the recording of mortgages and mortgage assignments. *See Long's Appeal*, 77 Pa. 151, 153 (1874) (stating that a mortgage "is required to be recorded as other deeds are"); *Appeal of Nice*, 54 Pa. at 201 (referring to an unrecorded mortgage as a "forbidden thing"); *In re Luch's Appeal*, 44 Pa. at 523 ("all mortgages are required to be [recorded]").

---

[18] Act of July 18, 1941, P.L. 421, No. 169, § 1.

Furthermore, as previously discussed at length, this Court has recognized that recording is intended to protect the public welfare. *See Salter*, 15 Pa. at 263; *see also McCaraher*, 5 Watts & Serg. 21 (describing the Office of Recorder of Deeds as the "pivot on which all our titles to real estate turn" which, by design, is to "enable all persons to obtain knowledge of the state of titles to real estate by deeds and conveyances, and also of charges and encumbrances existing on them by way of mortgage"). Thus, as in *Beam*, I conclude that the authority to institute judicial proceedings as required to execute its statutory responsibility is necessarily implied in the authority conferred upon the Recorders by the General Assembly.

Recorders' request for a declaratory judgment with injunctive relief is, in my view (and as in *Beam*), an appropriate vehicle for the execution of their statutory responsibility to maintain a public record of conveyances of real property.[19] *See* 42 Pa.C.S. § 7532 (defining the scope of declaratory relief);[20] *see also Beam*, 788 A.2d at 362 (finding that

---

[19] Appellants also brought claims sounding in quiet title, unjust enrichment, civil conspiracy and aiding and abetting, and sought monetary damages based upon Appellees' failure to record mortgage assignments. *See generally* Chester County Complaint, 10/10/2014; Bucks County Complaint, 10/24/2014; Berks County Complaint, 10/15/2015; Delaware County Amended Complaint, 10/30/2015 (hereinafter referred to collectively as "Complaints"). As discussed hereinabove, an implied public right of action gives a government entity, acting in an official capacity, the right to seek judicial relief to obtain compliance with a statutory or constitutional provision. *See Beam*, 788 A.2d at 359-60; Davis, 114 Colum. L. Rev. at 9. As I conclude that section 351 requires recording, the right of action implied under section 351 is to enforce this provision so that county recorders can fulfill their duties of maintaining a complete public record of land conveyances. *See, cf., Pennsylvania Human Relations Comm'n*, 382 A.2d at 736 (providing that only the powers necessarily implied may be exercised). That upon the filing of the mortgage assignments, the Recorders are entitled to collect the statutorily-mandated fees is irrelevant to this analysis.

[20] Section 7532 provides:

the Department's "pursuit of injunctive relief in a judicial forum represents a restrained and supervised form of administrative action"). In deciding the Recorders' declaratory judgment action, I would declare that the failure to record mortgage assignments is a violation of Pennsylvania law. *See* Complaints, Prayer for Relief, ¶ (e). I express no view as to the nature of the injunctive relief available, as that question is not presently before this Court and should be addressed in further proceedings on remand.

For the foregoing reasons, I would reverse the decision of the Commonwealth Court and remand the case for further proceedings. I therefore dissent from the Majority's contrary conclusion.

---

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S. § 7532.